James Everett Shelton
316 Covered Bridge Road
King of Prussia, PA 19406
(484) 626-3942
Jeshelton595@gmail.com

Plaintiff, Pro Se

## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA

_____

JAMES EVERETT SHELTON,

              Plaintiff

              v.

NATIONAL STUDENT ASSIST LLC & NIR.
J GOLDIN, et. al

              Defendants

Case No. 2:18-cv-02545

Honorable Mitchell S. Goldberg

## PLAINTIFF'S OPPOSITION TO DEFENDANTS NATIONAL STUDENT ASSIST LLC & NIR J. GOLDIN'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

# INTRODUCTION

Plaintiff James Everett Shelton ("Plaintiff") filed this suit alleging that Liberty Financial USA, LLC ("Liberty") and National Student Assist LLC ("National")[1] made at least seven (7) unwanted prerecorded robocalls using an automatic telephone dialing system ("ATDS") to his cellular telephone line, which are prohibited by the Telephone Consumer Protection Act ("TCPA"). *See* 47 U.S.C. § 227(b)(1)(A)(iii). The calls were made despite the fact that Plaintiff's telephone number was on the National Do Not Call Registry.

In response to these straightforward claims, National launches an attack on the Plaintiff claiming that he falls outside the TCPA's "zone of interests" and asserts that consumers who receive illegal telemarketing calls do not suffer any injury following the United States Supreme Court's decision in *Spokeo v. Robins,* 136 S.Ct. 1540 (2016). This is an argument that courts have repeatedly rejected in the TCPA context, including the Third Circuit Court of Appeals in 2017. Defendants cite Stoops v. Wells Fargo Bank, N.A., 197 F. Supp. 3d 782 (W.D. Pa. 2016), arguing that Plaintiff is a "professional plaintiff". Setting aside the meritless nature of this argument, what Defendants fail to mention, however, is that this case has been repeatedly rejected by various courts and that this case bears no similarities to this present case.

Defendants then argue that they are not subject to jurisdiction in Pennsylvania. As Plaintiff received the calls as a permanent resident of Pennsylvania, and as National directed its calls into Pennsylvania at Plaintiff's Pennsylvania area code, this Court has jurisdiction over National and its owner/CEO, Nir J. Goldin, individually. There is nothing unfair about bringing the defendants into court in Pennsylvania, when defendants themselves decided to do business in

---

[1] This brief in opposition is directed to the Joint Motion to Dismiss of National Student Assist LLC and Nir J. Goldin. Plaintiff will file a separate brief in opposition to defendants Liberty Financial USA, LLC's and Brian M. Roche's Joint Motion to Dismiss.

Pennsylvania by engaging in a telemarketing campaign targeting Pennsylvania residents, such as the Plaintiff.

Next, Defendants argue that Plaintiff improperly "lumped" two additional defendants, Liberty Financial USA, LLC and its owner/CEO, Brian M. Roche, individually, into this case. Defendants essentially say that Plaintiff should have filed a separate action against those defendants. National and Goldin state that they do not know Liberty and Roche, and that they have nothing to do with each other. Plaintiff's complaint alleges otherwise. Plaintiff's claim is that these entities called Plaintiff using the exact same prerecorded message from "Steven" who repeatedly invited Plaintiff to call the same telephone number, saying that Plaintiff had been "approved for up to $55,000 for [a] new debt relief program". After calling this number on two occasions, Plaintiff was connected with representative from Liberty and from National, respectively. It is Plaintiff's assertion that these two companies were "an agent or joint venture of each other" and that these defendants basically worked together to commission robocalls *en masse* to consumers nationwide, including the Plaintiff. From a practical standpoint, the named defendants hired a mutual third-party telephone dialing company to make automated calls on their behalf, in order to market their debt relief services. As a result, Defendants have not been misjoined.

Defendants make the argument that Plaintiff's claims should be dismissed against one of the individual defendants, Nir J. Goldin, who is the owner/CEO of National. Defendants argue that Plaintiff named Goldin only because he is an officer of National. One has to wonder if defendants' counsel has fully read Plaintiff's complaint. Defendants falsely claim that Plaintiff made no allegations in his complaint against Nir J. Goldin as an individual, and claim that Plaintiff made no allegations that the individuals engaged in any activities in the Commonwealth

3

of Pennsylvania. Finally, defendants claim that Plaintiff's complaint contains no allegations which would lead to the piercing of the corporate veil. Defendants fail to understand that the TCPA imposes personal liability on individuals who participate in or commission telemarketing calls, as detailed in Plaintiff's well-pled complaint. In fact, Plaintiff has set forth a valid and well-grounded argument that defendants knowingly directed autodialed calls into Pennsylvania. This is an argument that should be litigated at the summary judgment stage, not in a Motion to Dismiss.

Defendants' motion to dismiss should be DENIED in its entirety.

## BACKGROUND

The Plaintiff brought this action under TCPA, which was enacted in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs.*, *LLC,* 132 S. Ct. 740, 745 (2012). Plaintiff's claim is that National violated the TCPA by contacting him on his cellular telephone repeatedly in May, 2018. ECF No. 1 at ¶¶ 52. National did so in order to try to secure Plaintiff as a customer of its debt relief and/or debt consolidation services. *Id.* at ¶ 53.

## LEGAL STANDARD

A Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) is granted where the complaint fails to assert "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." Id. at 555. The question is not whether the claimant "will ultimately prevail… but whether his complaint [is] sufficient to cross the federal court's threshold." Skinner v. Switzer, 562 U.S. 521, 529-30 (2011) (internal quotation marks omitted). Thus, assessment of the sufficiency of a complaint is "a context- dependent exercise" because "[s]ome claims require more factual explication than others to state a plausible claim for relief."

W. Penn Allegheny Health Sys., Inc. v. UPMC, 627 F.3d 85, 98 (3rd Cir. 2010). In deciding a

12(b)(6) motion and when considering the legal sufficiency of a claim, courts accept factual

allegations as true, drawing all reasonable inferences therefrom in the favor of the non-moving

party. ALA, Inc. v. CCAIR, Inc., 29 F.3d 855, 859 (3d Cir. 1994). See also, Mayer v. Belichick,

605 F.3d 223, 230 (3d Cir. 2010) ("[A] court must consider only the complaint, exhibits attached

to the complaint, matters of public record, as well as undisputedly authentic documents if the

complainant's claims are based upon these documents."). For this reason, district courts strongly

disfavor Rule 12(b) (6) motions. Melo-Sonics Corp. v. Cropp, 342 F.2d 856 (3d Cir.1965);

Kuromiya v. United States, 37 F. Supp. 2d 717, 722 (E.D.Pa.1999). A court must only dismiss a

complaint if "`it is clear that no relief could be granted under any set of facts that could be

proved consistent with the allegations.'" H.J. Inc., 492 U.S. at 249-50, 109 S. Ct. 2893 (quoting

Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S. Ct. 2229, 81 L. Ed. 2d 59 (1984)); Neitzke

v. Williams, 490 U.S. 319, 326-327, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989). Finally, "if a

[claim] is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment,

unless an amendment would be inequitable or futile." Phillips v. County of Allegheny, 515 F.3d

224, 236 (3d Cir. 2008).

    **1.   12(b)(1) and Article III Standing**

    "[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered

an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not

conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the

defendant; and 3) it is likely, as opposed to merely speculative, that the injury will be redressed

by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528

U.S. 167, 180-81, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000). An injury-in-fact is "an invasion of

a legally protected interest" that is "concrete and particularized." *Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 762-63 (3rd. Cir. 2009) (*quoting Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "[T]he court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to Plaintiff." *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000).

### 2. 12(b)(2) and Personal Jurisdiction

A federal court may exercise personal jurisdiction over a non-resident Defendant to the extent permissible under the law of the forum state. Fed.R.Civ.P. 4(k)(1)(A); *Marten v. Godwin,* 499 F.3d 290, 296 (3d Cir. 2007). Under Pennsylvania's long-arm statute, personal jurisdiction over a non-resident Defendant "to the fullest extent allowed under the Constitution of the United States." 42 Pa.C.S.A. § 5322(b); *Renner v. Lanard Toys Ltd.*, 33 F.3d 277, 279 (3d Cir.1994). The statute's reach is coextensive with the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *See Grand Entertainment Group, Ltd. v. Star Media Sales*, 988 F.2d 476, 481 (3d Cir.1993).

<strong>ARGUMENT</strong>

### 1. Plaintiff Falls within the TCPA's "Zone of Interests"

National argues that Plaintiff does not fall within the TCPA's "zone of interests" because he has previously filed cases to vindicate his rights for illegal telemarketing calls. The Third Circuit Court of Appeals considered the TCPA's "zone of interests" in *Leyse v. Bank of Am. Nat'l Ass'n*, 804 F.3d 316 (3d Cir. 2015), holding that "a regular user of the phone line who occupies the residence being called undoubtedly has the sort of interest in privacy, peace, and quiet that Congress intended to protect." *Id.* at 326. The Third Circuit further stated that "because the TCPA is a remedial statute, it should be construed to benefit consumers." *Id.* at 327. Here, there is no ambiguity concerning the TCPA's application to Plaintiff. This action was brought by

6

the recipient of numerous unsolicited telemarketing robocalls to enforce a statute designed to protect recipients of unsolicited telemarketing calls. The meaning of the statute is plain, and the Court need go no further.

Notwithstanding the language of the statute, National contends that Plaintiff "drums up TCPA litigation", and therefore should be stripped of the TCPA's protections. On what evidence, other than its own speculation and apparent resentment for being sued by Plaintiff, does National base the assertion that Plaintiff wanted to be called? That Plaintiff has filed lawsuits to *stop* illegal telemarketing calls and that his company's website informs telemarketing companies not to call his number on the National Do Not Call Registry or he will act against the company. Plaintiff's activities as a consumer advocate empowered by the congressionally-conferred private right of action to enforce the TCPA, supports one conclusion: that Plaintiff, a private citizen motivated to fight back against illegal telemarketers, is exactly the sort of plaintiff Congress intended the TCPA to protect, and fits squarely within the TCPA. Rather, by actively holding defendants to account for their illegal acts via the private right of action afforded to consumers by Congress, Plaintiff is doing ***exactly*** what Congress intended—he is enforcing the law. *See Universal Underwriters Ins. Co. v. Lou Fusz Auto. Network, Inc.*, 401 F.3d 876, 881 (8th Cir. 2005) (recognizing that fixed award liquidated damages under the TCPA demonstrate the intent to incentivize aggrieved parties to act as "private attorneys general").

National's support for its position comes from *Stoops v. Wells Fargo Bank, N.A.,* 2016 U.S. Dist. LEXIS 82380 (W.D. Pa. June 24, 2016). However, a glaring factual distinction between that case and this matter is that the plaintiff in *Stoops* conceded that she purchased cell phones for the *sole purpose* of manufacturing TCPA claims. *See Id.* at *32 ("Q. Does anyone you know ever call you at these phone numbers? A. No, ma'am. Q. Did you ever use any of these

phone numbers to call anyone? A. No, ma'am…Q. How did you use this phone number after it was activated, if at all? A. For my business. Q. Okay. When you say for your business, what do you mean? A. Suing clients like yours, Wells Fargo, for violating the TCPA.") *Stoops*, ECF No. 54-7.

Stoops purchased "at least 35 cell phones and cell phone numbers with prepaid minutes for the purpose of filing lawsuits under the Telephone Consumer Protection Act." *Stoops*, 197 F. Supp. 3d at 788. She selected Florida telephone numbers for these cell phones "because there is a depression in Florida, where people would be usually defaulting on their loans or their credit cards." Id. She collected a shoe box full of cell phones to fish for accidental wrong number calls, id. at 796 (alteration omitted), and carried all 35 phones with her whenever she traveled, Deposition of Melody Stoops at 149-50 (ECF pp. 37-38), *Stoops*.

Defendants' factually and procedurally inapposite reliance on Stoops should likewise be rejected by this Court. Here, there is no such evidence that Plaintiff purchases or uses telephones for the sole purpose of bringing lawsuits under the TCPA. There's a good reason for that, it's not true. *See* <u>Exhibit A</u>, Affidavit of James Everett Shelton at ¶ 10. The phone that was called promoting National's services is the only cellular telephone that Plaintiff owns. *Id.* at ¶ 2. That phone is also the number used for the Plaintiff's business, Final Verdict Solutions. *Id.* at ¶ 4. Final Verdict Solutions was registered with the Commonwealth of Pennsylvania on March 7, 2016, is in the judgment collection business, and has successfully collected approximately 30 judgments totaling more than $100,000, and has outstanding judgment receivables currently worth more than $600,000. *Id.* at ¶ 5-7. In other words, it's a successful new small business. The simple fact of the matter is that Plaintiff does not collect telephones like the plaintiff in *Stoops* in

order to "drum up TCPA litigation" like National alleges[2], but instead will fight back when companies illegally contact him at his number listed on the National Do Not Call Registry.

With good reason, federal courts have been skeptical of defendants attempting to paint TCPA cases with a broad brush invoking *Stoops*. *See e.g. Jones v. Revenue Assistance Corp.*, No. 14-10218-GAO, 2016 U.S. Dist. LEXIS 136993, at *16-17 (D. Mass. Aug. 31, 2016) ("Although Defendant argues that Plaintiff's only source of income since 2012 has been lawsuits, unlike the plaintiff in Stoops, Jones has not admitted that he "files TCPA actions as a business."); *Evans v. Nat'l Auto Div., L.L.C.*, No. 15-8714, 2016 U.S. Dist. LEXIS 123660, at *8 (D.N.J. Sept. 12, 2016) ("As a consumer complaining of receiving intrusive telemarketing calls, Plaintiff falls directly within the zone of interests protected by the TCPA… *Stoops* is distinguishable from this case on the grounds that the plaintiff in that case acknowledged that she only purchased cell phones in order to file TCPA lawsuits.") In fact, as one federal court stated when distinguishing *Stoops* in *Mey v. Venture Data, LLC,* 245 F. Supp. 3d 771 (N.D.W. Va. 2017):

> It is true that the plaintiff has brought a number of TCPA cases. It is further true that she has telephone answering and recording equipment which is more sophisticated than that of the average consumer. It is not true that she seeks to receive such calls. She does nothing to attract the calls; in fact, her telephone number is listed on the National Do Not Call Registry. Rather, she uses her equipment to record and document TCPA calls when they do occur.

> This does not deprive the plaintiff of standing any more than the purchase of a burglar alarm would indicate that the homeowner wanted her house to be broken into.

---

[2] Recognizing that these realities are fatal to their position, National attempts to recast Plaintiff's website as a business for TCPA lawsuits by claiming that his notice to telemarketers not to contact him is an admission, when instead it is an unfortunately necessary supplement to his inclusion on the National Do Not Call Registry to attempt to put companies on notice that he does not want their telemarketing calls. As this lawsuit, and the others he has filed, make clear, not all telemarketing companies respect the National Do Not Call Registry or Plaintiff's wishes, despite this notice.

In support of its argument, POS cites *Stoops v. Wells Fargo Bank, N.A.*, 197 F.Supp.3d 782 (W.D. Pa. 2016). In *Stoops*, the district court found that the plaintiff did not have standing to sue when she suffered no injury-in-fact. The plaintiff in *Stoops*, who resided in Pennsylvania, purchased and maintained over thirty cell phones with Florida telephone numbers and admitted to doing this because she knew the locations she selected in Florida were economically depressed and included people who would be defaulting on their loans or their credit cards. The plaintiff waited for the phones to ring; she sometimes answered the calls and told the callers to stop, but she testified her hope was that the calls would continue so she could treble her damages…

On the other hand, in *Fitzhenry v. ADT Corp.*, 2014 U.S. Dist. LEXIS 166243, 2014 WL 6663379, at *5 (S.D. Fla. Nov. 3, 2014), the Court held that "[a]lthough Plaintiff may have created a home environment that allows him to document telemarketing calls better than most consumers, the Court is not convinced that Plaintiff is outside of the TCPA's zone of interest…

This Court declines to follow *Stoops*. This plaintiff did not try to receive calls from other states. She secured equipment to document calls that came to her home. While POS is understandably frustrated by Ms. Mey's efficacy, she is doing exactly what Congress intended —enforcing the law.

Just like the plaintiff in *Mey*, Plaintiff has placed his number on the National Do Not Call Registry and does not want these unwelcomed calls, but will not vacillate in filing a claim against companies who illegally contact him, and this is exactly what the TCPA was intended for.

Closely analogous to this lawsuit is *Abramson v. CWS Apt. Homes, LLC*, No. 16-426, 2016 U.S. Dist. LEXIS 146627 (W.D. Pa. Oct. 24, 2016), where the Plaintiff filed a putative class action under the TCPA for a single automated telemarketing call, and the defendant asserted that Mr. Abramson, following the *Stoops* decision in the same district that *Stoops* was decided, did not suffer an injury in fact as he had filed more than 300 lawsuits (more than ten times the number of lawsuits Plaintiff has filed as of now) to vindicate his rights under the TCPA. In denying the motion to dismiss, the Court found:

Abramson suffered a concrete harm analogous to the common law tort of invasion of privacy. Congress has determined unrestricted telemarketing "can be an intrusive

invasion of privacy." In line with Congress' finding, courts hold "a plaintiff demonstrates a violation of privacy interests, and therefore an injury-in-fact, after receiving automated calls" in violation of the Act. Abramson alleges CWS sent him the offending text message despite his lack of consent to receive telemarketing and his lack of business dealings with CWS. Abramson also claims he never provided CWS with his cell phone number. These facts adequately demonstrate Abramson suffered a concrete injury akin to a violation of his privacy interests. We reject CWS's argument Abramson's pursuit of his rights under the Act in other lawsuits demonstrates the lack of an injury. As Abramson adequately pleads a concrete and particularized injury, he satisfies Article Ill's standing requirements. Abramson's decision to enforce his rights under the Act does not negate the existence of a cognizable injury.

*Id.* at *6-7 The facts are very similar for Plaintiff; he received at least seven (7) solicitation calls despite never doing business with the Defendants and never provided them with his phone number prior to receiving the robocalls.

It should be noted that National was not calling Plaintiff for any type of business purpose in connection with Plaintiff's company, Final Verdict Solutions. Defendants' reference to the fact that Plaintiff has used his cell phone for business as well as for personal purposes is irrelevant. The telemarketing calls did not have anything to do with Plaintiff's business. National's purported services are debt consolidation and/or debt relief. These services are of a personal nature, not a business nature.

Finally, Defendant alleges that Plaintiff "doesn't request that he never be called back" when interacting with telemarketers. This statement is patently false. In the instant case, after being bothered and annoyed by National and getting at least seven (7) robocalls, Plaintiff told Defendants to place his number on the Do-Not-Call list and provide him with a copy of their Do-Not-Call policy. See Exhibit B, E-Mail to National Student Assist LLC.

**Plaintiff Has Established that he Suffered Multiple Concrete Injuries**

In *Spokeo*, the Supreme Court confirmed that a plaintiff must plead a concrete and particularized injury, but clarified that an "intangible" injury is sufficient to confer Article III

standing. Since *Spokeo,* district courts have repeatedly held that plaintiffs who allege under the

TCPA that telemarketing calls to invade their privacy or are a nuisance, or who complain that the

calls have occupied their phone lines preventing legitimate communications, have established

Article III standing.[3] In fact, earlier this year, the Third Circuit Court of Appeals held:

> [W]e conclude that the injuries alleged by Susinno are concrete for two reasons.
> First, Congress squarely identified this injury. The TCPA addresses itself directly
> to single prerecorded calls from cell phones, and states that its prohibition acts "in
> the interest of [ ] privacy rights." 47 U.S.C. § 227(b)(2)(C). The congressional
> findings in support of the TCPA likewise refer to complaints that "automated or
> prerecorded telephone calls are a nuisance [and] . . . an invasion of privacy." Pub.
> L. 102-243, § 2. We therefore agree with Susinno that in asserting "nuisance and
> invasion of privacy" resulting from a single prerecorded telephone call, her
> complaint asserts "the very harm that Congress sought to prevent," arising from
> prototypical conduct proscribed by the TCPA. App. 11 (First Amended
> Complaint); *see also Van Patten v. Vertical Fitness Grp., LLC,* 847 F.3d 1037,
> 1043 (9th Cir. 2017) (finding two unwanted text messages constituted [**10] a
> concrete injury under the TCPA, as they "present the precise harm and infringe the
> same privacy interests Congress sought to protect")…
>
> Traditionally, a plaintiff's "privacy is invaded" for the purpose of an intrusion upon
> seclusion claim by telephone calls "only when [such] calls are repeated with such
> persistence and frequency as to amount to . . . hounding." Intrusion upon
> Seclusion, Restatement (Second) of Torts § 652B, cmt d (1977). The
> Second [**11] Restatement suggests that because "two or three" [*352] calls
> would not be "highly offensive to the ordinary reasonable [person]," they
> traditionally would provide no cause of action. *Id.* Yet when Congress found that

---

[3] *See Cabiness v. Educ. Fin. Sols.,* No. 16-cv-01109-JST, 2016 WL 5791411 (N.D. Cal. Sept. 1,
2016) (a TCPA violation "necessarily harms the recipient of the unwanted calls such that the
statutory violation is sufficient on its own to constitute an injury in fact"); *Cour v. Life360, Inc.,*
No. 16-CV-00805-TEH, 2016 WL 4039279, at *2 (N.D. Cal. July 28, 2016) (rejecting Life360's
argument that invasion of privacy is insufficient to confer Article III standing); *Juarez v.
Citibank, N.A.,* No. 16-CV-01984-WHO, 2016 WL 4547914, at *3 (N.D. Cal. Sept. 1, 2016)
("Juarez's allegation that he received repeated unwanted calls that caused him aggravation,
nuisance, and an invasion of privacy, is sufficient to allege a 'concrete' and 'particularized'
injury that establishes standing under *Spokeo.*"); *Krakauer v. Dish Network L.L.C.,* No. 1:14-CV-
333, 2016 WL 4272367, at *2 (M.D.N.C. Aug. 5, 2016) ("While class members did not
necessarily pick up or hear ringing every call at issue in this case, each call created, at a
minimum, a risk of an invasion of a class member's privacy" for purposes of Article III
standing); *Caudill v. Wells Fargo Home Mtg., Inc.,* Civ. No. 5:16–066, 2016 WL 3820195, at *2
(E.D. Ky. July 11, 2016) (noting that calls caused harms "such as the invasion of privacy [that]
have traditionally been regarded as providing a basis for a lawsuit in the United States").

"[u]nsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients," *Van Patten*, 847 F.3d at 1043, it sought to protect the same interests implicated in the traditional common law cause of action. Put differently, Congress was not inventing a new theory of injury when it enacted the TCPA. Rather, it elevated a harm that, while "previously inadequate in law," was of the same character of previously existing "legally cognizable injuries." *Spokeo*, 136 S. Ct. at 1549. *Spokeo* addressed, and approved, such a choice by Congress.

For these reasons, we hold that Susinno has alleged a concrete, albeit intangible, harm under the Supreme Court's decision in *Spokeo*.

*Susinno v. Work Out World Inc.,* 862 F.3d 346, 351-52 (3d Cir. 2017). This Court should reach the same result here.

As explained below, Plaintiff suffered at least four concrete injuries that have been recognized under the common law, or by Congress: (1) invasion of privacy and a nuisance; (2) occupation of Plaintiff's cellular telephone; (3) wasted time; and (4) economic harm from the use of his cell phone. Each injury alone is sufficient in and of itself to establish Article III standing.

Plaintiff is a student at Case Western Reserve University going into his senior year as an undergraduate. These calls annoyed him and distracted him from his work as a student. This is a valid concrete injury in and of itself.

   a.   Defendant's Calls Invaded Plaintiff's Privacy and Were a Nuisance
Nuisance and invasion of privacy are the precise harms that Congress sought to prevent in enacting the TCPA. Here, the Plaintiff has alleged that he suffered particularized and concrete injuries because the calls at issue were a nuisance, forced him to incur expenses, and violated his privacy rights—the exact harms that Congress sought to prevent in enacting the TCPA. *See* 47 U.S.C. § 227 (Congressional Findings); *see also Owens Ins. Co. v. European Auto Works, Inc.*, 695 F.3d 814, 819-20 (8th Cir. 2012) ("[T]he ordinary meaning of the term 'right of privacy' easily includes violations of the type of privacy interest protected by the TCPA.").

When Congress established the TCPA in 1991, it did so to protect consumers from the "nuisance, invasion of privacy, cost, and inconvenience that autodialed and prerecorded calls generate." *Rules & Regulations Implementing the Telephone Consumer Protection Act*, 30 F.C.C.R. 7961, 7979 (2015). Robocalls are, as the Act's sponsor put it, "the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall." 137 Cong. Rec. 30,821–30, 822 (1991) (Statement of Sen. Hollings). And, "like the buckets enchanted by the Sorcerer's Apprentice, [they] continue until stopped by their true master." *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 639 (7th Cir. 2012); *see also LaVigne v. First Cmty. Bancshares, Inc*., No. 1:15-CV-00934-WJ-LF, 2016 WL 6305992, at *7 (D.N.M. Oct. 19, 2016) ("The TCPA codifies the application of a long-recognized common law tort of invasion of privacy, and the Court would add the tort of nuisance as well, for a particularly intrusive type of unwanted conduct: unauthorized 'robocalls.'"). Plaintiff filed this lawsuit to combat the proliferation of intrusive, nuisance telemarketing practices violative of Plaintiff's privacy rights. *See* ECF No. 1 at ¶¶ 1, 2. Because these harms are the very harm that Congress sought to prevent in enacting the TCPA, they are sufficiently "concrete" to satisfy Article III injury in fact standing as articulated in *Spokeo*.

      b.  <u>Defendant Harmed Plaintiff by Occupying his Cellular Telephone Line.</u>

One purpose of the TCPA is to "keep[] telephone lines from being tied up." *American States Ins. Co. v. Capital Assocs.*, 392 F.3d 939, 942 (7th Cir. 2004). Just as the privacy interests identified in the TCPA are grounded in the common law tort of invasion of privacy, the harm caused by unwanted telemarketing calls to cell phones has a close relationship to the harm recognized by the ancient common law tort "trespass to chattels." *Mey v. Got Warranty, Inc*., No. 5:15-CV-101, 2016 WL 3645195, at *6 (N.D.W. Va. June 30, 2016). Indeed, courts have

repeatedly held that the electronic intrusion upon another person's computerized electronic equipment, even if temporary, constitutes trespass to chattels. *See, e.g., Czech v. Wall St. on Demand,* 674 F. Supp. 2d 1102, 1122 (D. Minn. 2009) (declining to dismiss cell phone owner's trespass to chattels claim against sender of unwanted text messages).

In *Mey v. Got Warranty, Inc*., the court found trespass to chattels to be "a close analog for a TCPA violation" and held that the defendant's occupation of the plaintiff's telephone line was a concrete injury sufficient to establish Article III standing for the plaintiff's TCPA claim. 2016 WL 3645195, at *6. The *Mey* court thus denied the defendant's motion to dismiss for lack of standing, explaining that "the TCPA can be viewed as merely applying this common law tort to a 21st-century form of personal property and a 21st-century method of intrusion." *Id.* This Court should reach the same result here. As in *Mey,* Plaintiff received illegal telemarketing calls on his cell phone, which occupied the line, and prevented Plaintiff from engaging in legitimate communications. *See* Dkt. No. 1 at ¶ 67 .

*Spokeo* also recognized that an injury would satisfy Article III's "concreteness" requirement if the injury "has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Spokeo*, 2016 WL 2842447 at *7. Invasion of privacy is just such a harm long recognized by the common law. Almost all states recognize invasion of privacy as a common law tort. *See* Eli A. Meltz, *No Harm, No Foul? Attempted Invasion of Privacy and the Tort of Intrusion Upon Seclusion*, 83 Fordham L. Rev. 3431, 3440 (May 2015) (state-by-state survey; "Currently, the vast majority of states recognize the intrusion strand of invasion of privacy either under common law or by statute"). In enacting the TCPA, Congress repeatedly recognized that telemarketing calls are violative of consumers' privacy rights. The right to privacy is also protected under the Constitution. *See, e.g., Lawrence*

15

*v. Texas*, 539 U.S. 558, 123 S. Ct. 2472, 156 L. Ed. 2d 508 (2003); *Eisenstadt v. Baird*, 405 U.S. 438, 92 S. Ct. 1029, 31 L. Ed. 2d 349 (1972). Accordingly, as the protections afforded consumers under the TCPA and FCRA have a close relationship to the right of privacy and nuisance long recognized by the common law, consumers who allege a violation of the TCPA and FCRA adequately allege a concrete "injury in fact" sufficient to satisfy Article III's standing requirements.

  c. <u>The Telemarketing Calls Caused Plaintiff Wasted Time</u>

The first post-*Spokeo* decision to address whether a mere allegation of a TCPA violation satisfies Article III's requirement of "injury in fact" holds that wasting the recipient's time is a concrete injury that satisfies Article III:

> Here, the court is satisfied that Plaintiffs' allegations demonstrate "concrete injury" as elucidated in *Spokeo*. In *Spokeo*, the "injury" Plaintiffs incurred was arguably merely procedural and thus non-concrete. In contrast, the TCPA… violations alleged here, if proven, required Plaintiffs to waste time answering or otherwise addressing widespread robocalls. The use of the autodialer, which allegedly enabled Defendants to make massive amounts of calls at low cost and in a short period of time, amplifies the severity of this injury. As Congress and Washington State's legislature agreed, such an injury is sufficiently concrete to confer standing.

*Booth v. Appstack, Inc.*, 2016 U.S.Dist LEXIS 68886, *15-17 (W.D. Wash. May 25, 2016). This decision is consistent with a number of pre-*Spokeo* decisions which also recognized that lost time is an adequate injury-in-fact in TCPA and other cases. *See Leung v. XPO Logistics, Inc.*, 2015 WL 10433667, *4 (N.D. Ill. Dec. 9, 2015) ("Leung alleges that he lost time in responding to XPO's call. … That is enough, so XPO's motion must be denied."); *Martin v. Leading Edge Recovery Solutions., LLC*, 2012 WL 3292838, at *3-4 (N.D. Ill. Aug. 10, 2012) ("[plaintiffs suffered an injury in fact] because they had to spend time tending to unwanted calls").

      d.  Plaintiff suffered tangible concrete harm in the form of economic damages <u>from the use of his cellular telephone.</u>

Finally, not only has Plaintiff alleged concrete but "intangible" harms due to invasion of privacy, nuisance, trespass to chattel and wasted time, but he also sustained "tangible" sustained economic harm as a direct result of National's illegal telemarketing practices. The calls at issue were received on a cell phone used by and paid for by Plaintiff. The FCC has long recognized that the recipient of telemarketing calls to a cell phone is "charged" for such calls, even if the cell phone subscribes to a plan that charges a flat monthly rate. *See In re Rules and Regulations Implementing the TCPA of 1991,* 18 FCC Rcd. 14014, 14115 (2003); *In re Rules and Regulations Implementing the TCPA of 1991*, 23 FCC Rcd. 559, 562 (2007); *In re Rules and Regulations Implementing the TCPA of 1991*, 27 FCC Rcd. 1830, 1839–40 (2012); *Fini v. DISH Network L.L.C.*, 955 F. Supp. 2d 1288, 1297 (M.D. Fla. 2013*); Lee v. Credit Management*, 846 F. Supp. 2d 716, 729 (S.D. Tex. 2011). As Plaintiff paid for his monthly cell phone on which he received the telemarketing calls at issue, Plaintiff has alleged a tangible injury in fact sufficient to satisfy Article III's standing requirement. *See Warnick v. DISH Network, LLC,* 2014 U.S.Dist. LEXIS 138381 * 43-46 (D. Colo. Sept. 30, 2014) (rejecting argument that because plaintiff did not have a pay per call plan he did not suffer any injury as a result of the calls at issue); *Soppet v. Enhanced Recovery Co.*, LLC, 679 F.3d 637, 638 (7th Cir. 2012) (consumers ultimately bear the costs of calls to violative calls to cell phones regardless of "whether they pay in advance or after the minutes are used"). This "tangible" harm is sufficient to confer standing under *Spokeo*.

      The invasion of privacy and the allegation that the illegal calls cost Plaintiff money—financial harm—are not speculative future injuries or injuries based on the violation of rights provided in a statute. *See e.g. Jamison v. Esurance Insurance Services, Inc.,* 2016 WL 320646, *3 (N.D. Tex. Jan. 27, 2016) ("Here, Jamison alleged that when Esurance violated the TCPA, it

caused her to incur cellular telephone charges or to reduce her previously-paid-for cellular telephone time, and that it invaded her privacy. Dkt. 7, Pl.'s First Am. Compl. ¶ 49. At this stage, this pleading is sufficient to establish an injury in fact.").

**2. The Court has Specific Jurisdiction over the Defendants.**

A federal court may exercise personal jurisdiction over a non-resident Defendant to the extent permissible under the law of the forum state. Fed.R.Civ.P. 4(k)(1)(A); *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007). Under Pennsylvania's long-arm statute, personal jurisdiction over a non-resident Defendant "to the fullest extent allowed under the Constitution of the United States." 42 Pa.C.S.A. § 5322(b); *Renner v. Lanard Toys Ltd.*, 33 F.3d 277, 279 (3d Cir.1994). The statute's reach is coextensive with the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *See Grand Entertainment Group, Ltd. v. Star Media Sales*, 988 F.2d 476, 481 (3d Cir.1993).

Specific personal jurisdiction exists "when the claim arises from or relates to conduct purposely directed at the forum state." *Marten v. Godwin*, 499 F.3d at 296. To establish specific jurisdiction, Plaintiff must prove: (1) the defendant has purposefully directed his activities at the forum; (2) Plaintiff's claim arises out of or relates to at least one of those specific activities, and (3) that the court's exercise of jurisdiction over the defendant comports with traditional notions of fair play and substantial justice. *Id.*

Moreover, "[i]t is well established that in deciding a motion to dismiss for lack of jurisdiction, a court is required to accept Plaintiff's allegations as true, and is to construe disputed facts in favor of Plaintiff." *Toys "R" Us, Inc. v. Step Two, S.A.,* 318 F.3d 446, 457 (3d Cir. 2003).

Resolving this matter in Pennsylvania makes sense. Courts have repeatedly held where a defendant makes a call or sends a message into the forum state in violation of the TCPA, this action is sufficient to confer specific jurisdiction over the defendant. *See e.g. Rinky Dink Inc. v. Electronic Merchant Systems Inc.*, No. C13-1347-JCC, 2014 WL 5880170, at *2–3 (W.D. Wash. Sept. 30, 2014) (finding express aiming where defendant transmitted calls to telephone numbers with Washington area codes, even if at the direction of another party); *Luna v. Shac, LLC*, No. C14-00607 HRL, 2014 WL 3421514, at *3 (N.D. Cal. July 14, 2014) (finding that a defendant who intentionally texts a cell phone number with a California area code in violation of the TCPA has expressly aimed its conduct at California); *Heidorn v. BDD Marketing & Mgt. Co., LLC*, Case No. C-13-00229 JCS, 2013 WL 6571629 at *7–8 (finding specific jurisdiction where plaintiff received unsolicited emails and phone calls at a number with a California area code); *Baker v. Caribbean Cruise Line*, No. CV 13-8246-PCT-PGR, 2014 WL 880634, at *2 (D. Ariz. Mar. 6, 2014) (finding specific jurisdiction established where defendant made calls to plaintiff's Arizona number).

In fact, courts in Pennsylvania had denied similar motions, where a foreign corporation makes a call into this District. For example, Judge Cohill held in *Abramson v. Caribbean Cruise Line, Inc.,* No. 2:14-cv-00435, 2014 U.S. Dist. LEXIS 88336 at *23-24 (W.D. Pa. June 23, 2014):

> First, we note that the call made by CCL was to a phone number bearing a (412) area code - such a code is limited to residents of Pennsylvania. By initiating a call to such a number, it can be said that Defendant CCL "expressly aimed their conduct at Pennsylvania" because the number was associated with the State of Pennsylvania. See Marten, 499 F.3d at 296. Defendant would have, or should have, known it was reaching into Pennsylvania when the call was made. This satisfies the requirement for sufficient minimum contacts under the law.

Similarly in *Abramson v. CWS Apartment Homes, LLC*, No. 16-426, 2016 U.S. Dist. LEXIS

146627, at *10-11 (W.D. Pa. Oct. 24, 2016), Judge Kearney held:

> District courts across the country have found purposeful direction based on allegations a defendant sent its telemarketing call to a number bearing the state's area code…We likewise find purposeful direction based on Abramson's averment CWS sent the text message to his cell phone bearing a Pennsylvania area code.
>
> The remaining requirements of specific personal jurisdiction are satisfied. As to the second requirement, Abramson's claim under the Act arises from this text message. As to the third requirement, CWS must "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." In making this determination, we consider: 1) the burden on CWS; 2) the interests of Pennsylvania; 3) Abramson's interest in obtaining relief; 4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and 5) the shared interest of the several states in furthering fundamental substantive social policies.
>
> CWS fails to meet its burden under this test. Only the first factor weighs in CWS's favor, as CWS has no apparent affiliation with Pennsylvania absent the text message and CWS claims defending a case in Pennsylvania would be a hardship because it is based in Texas. The remaining factors, however, do not demonstrate the exercise of jurisdiction contravenes fair play and substantial justice. As to the second factor, Pennsylvania "has an interest in ensuring that its residents have adequate recourse for harms inflicted by nonresidents." As to the third factor, Abramson has an interest in obtaining relief for violation of his rights under the Act. As to the remaining factors, CWS fails to identify facts weighing against the exercise of jurisdiction. CWS fails to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."

The material facts of this case mirror *Abramson*. Plaintiff's cell phone was intentionally

called in Pennsylvania as part of National's telemarketing campaign, and Plaintiff's claim arises

under the TCPA for that automated conduct, as discussed above. Furthermore, defendants has

not carried their burden as to why defending this lawsuit in a jurisdiction where they directed

their telemarketing would be unreasonable. Unlike *Abramson*, where the defendant did not offer

goods or services in Pennsylvania, National acquires Pennsylvania residents for its debt

consolidation and/or debt relief services, as it was trying to do with the Plaintiff. As a result, this

court's exercise of jurisdiction over the Defendant comports with traditional notions of fair play

and substantial justice. As Judge Cohill found in the *Abramson v. Caribbean Cruise Line, Inc.*

matter:

> Finding the necessary minimum contacts to establish specific personal jurisdiction
> over Defendant CCL, we move to considerations of whether litigation in this forum
> would offend "traditional notions of fair play and substantial justice." International
> Shoe v. Washington, 326 U.S. at 320…Because we found sufficient minimum
> contacts between CCL and Pennsylvania, and because CCL has failed to "present
> a compelling case that the presence of some other considerations would render
> jurisdiction unreasonable," we find that our exercise of specific personal
> jurisdiction over CCL does not offend the traditional notions [*25] of fair play and
> substantial justice. See Grand Entertainment, 988 F.2d at 483 (quoting Burger
> King, 471 U.S. at 477) (Noting that after sufficient minimum contacts are found,
> "it becomes the defendant's burden to "present a compelling case that the presence
> of some other considerations would render jurisdiction unreasonable").

2014 U.S. Dist. LEXIS 88336 at 24-25. To conclude that there is no specific jurisdiction when a

defendant intentionally sent a telemarketing text message to a Plaintiff that it admits it has no

business relationship with would likely eviscerate enforcement of the TCPA, since telemarketers

could simply call individuals with impunity, knowing that they would be required to come to

their home state in order to litigate a dispute. Defendant's position is contrary to routine

assertions of jurisdiction in cases asserting personal torts.

### 3. Nir J. Goldin May Be Held Personally Liable for His Personal Participation in the Alleged Violations

Defendant Nir J. Goldin seem to support his position on the ground that to hold him

liable for the actions of the corporation would require a "piercing of the corporate veil".

Defendants have put the cart before the horse. There can be no doubt that the TCPA can be

violated by an individual. These statutes are violated when an individual performs the act or does

the things that the statutes prohibit or protect consumers against, such as to make unsolicited,

automated calls to consumers on the Do-Not-Call registry. The fact that Mr. Goldin thus is acting

for a corporation also, of course, may make the corporation liable under the doctrine of

respondeat superior. It does not relieve Mr. Goldin individually of his responsibility.

In Texas v. American Blastfax, Inc., 164 F. Supp. 2d 892 (W.D. Tex. 2001), the State of

Texas filed suit against a spam-faxer for violations of the TCPA and Texas Deceptive Trade

Practices Act. After a trial, the court held that the individual defendants, i.e. the officers of the

fax-blasting company, were jointly and severally liable with their company:

"The Court finds the above principles applicable to the TCPA that is, an officer may be
personally liable under the TCPA if he had direct, personal participation in or personally
authorized the conduct found to have violated the statute, and was not merely tangentially
involved. Individuals who directly (and here, knowingly and willfully) violate the TCPA should
not escape liability solely because they are corporate officers. As the State persuasively argues,
to hold otherwise would allow the individual defendants to simply dissolve Blastfax, set-up a
new shell corporation, and repeat their conduct. Congress surely did not intend to permit such a
result in passing the TCPA.

To be clear, the Court finds Greg and Michael Horne were the "guiding spirits" and the
"central figures" behind the TCPA violations. They were the two persons who controlled all of
Blastfax's day-to-day operations. They both had direct, personal involvement in and ultimate
control over every aspect of Blastfax's wrongful conduct that violated the TCPA, and/or directly
controlled and authorized this conduct. And they did so with their eyes and pocketbooks wide
open. After October 5, 2000, Greg and Michael Horne had good reason to believe they were
running a business that violated the TCPA. On February 9, 2001, they knew they were. Yet they
continued to direct their company to send unsolicited intrastate fax advertisements. This is far
more than a simple derivative liability case. Accordingly, the Court **899** holds defendants Greg
and Michael Horne are jointly and severally liable with defendant American Blastfax, Inc., for
all TCPA damages in this lawsuit."

See: https://law.justia.com/cases/federal/district-courts/FSupp2/164/892/2459891/

The "well-settled" tort rule provides that "when corporate officers directly participate in

or authorize the commission of a wrongful act, even if the act is done on behalf of the

corporation, they may be personally liable." *General Motors Acceptance Corp. v. Bates,* 954

F.2d 1081, 1085 (5th Cir.1992). The Fifth Circuit has elaborated that "[t]he thrust of the general

[tort] rule is that the officer to be held personally liable must have some direct, personal

participation in the tort, as where the defendant was the `guiding spirit' behind the wrongful

22

conduct ... or the `central figure' in the challenged corporate activity." *Mozingo v. Correct Mfg. Corp.,*752 F.2d 168, 174 (5th Cir.1985) (citing *Escude Cruz v. Ortho Pharmaceutical Corp.,* 619 F.2d 902, 907 (1st Cir.1980)). This is exactly what Plaintiff has alleged in his complaint.

Plaintiff's complaint sufficiently alleges that Mr. Goldin had direct, personal participation in the telemarketing campaign as alleged in this case. He was the "guiding spirit" and the "central figure". As further support, Plaintiff points the court to *Jackson v. Five Star Catering v. Beason*, 2013 U.S. Dist. LEXIS 159985, *10 (E.D. Mich. Nov. 8, 2013), wherein the court held "[M]any courts have held that corporate actors can be individually liable for violating the TCPA "where they 'had direct, personal participation in or personally authorized the conduct found to have violated the statute.'"

In *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415-16 (D. Md. 2011), the court held "If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force." This is sensible because many TCPA defendants are small, fly-by-night, scofflaw, judgment-proof entities that can easily close up shop and open under a different name. If the court holds the individual owners and officers of the corporation liable, Plaintiff will have a higher likelihood of realizing a successful recovery of any award or judgment he may obtain. Defendants will not be able to simply dissolve National and open a new shell company to continue breaking the law.

### 3. Defendants have not been Misjoined

Defendants argue that Plaintiff has misjoined causes of action. Once again, Plaintiff wonders if defense counsel has even read Plaintiff's complaint. Plaintiff alleges that in January, 2018 through May, 2018, Plaintiff received numerous robocalls from "Steven" pitching debt relief programs. Steven would tell Plaintiff to call a telephone number; Plaintiff did so in order to find

out who was behind this blatant, egregious robocall campaign. In March 2018, when Plaintiff called the number which "Steven" gave him in the robocall, 503-447-5313, Plaintiff was connected with Liberty Financial USA, LLC. In May 2018, Plaintiff received the same exact robocall from "Steven" once again. When Plaintiff dialed 503-447-5313, this time Plaintiff was connected with National Student Assist LLC. Both companies were pitching and selling debt relief services.

Since both companies commissioned the exact same robocall to Plaintiff's cell phone, it is likely that a third-party dialing company was used to make these calls. It is further likely that both Liberty and National used the same exact robodialing company to commission these calls to Plaintiff. Even if the two sets of defendants, Liberty and National, do not know each other personally (Plaintiff has a hard time believing this is really true), they surely know the dialing company that they both hired to make robocalls on their behalf in violation of the TCPA. How else would Plaintiff have received the exact same robocall message that he successfully traced back to both Liberty and National? This is a classic example of a common enterprise, or a joint venture. Plaintiff believes his complaint made this abundantly clear, and if not, Plaintiff should be granted leave to amend accordingly.

### CONCLUSION

For the foregoing reasons, defendants' motion should be denied.

Dated: July 23, 2018    By: _/s/ James Everett Shelton_____

                                     James Everett Shelton
                                     Email: jeshelton595@gmail.com
                                     316 Covered Bridge Road
                                     King of Prussia, PA 19406
                                     Telephone: (484) 626-3942
                                     *Plaintiff, Pro Se*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 23, 2018, I filed the foregoing with the Clerk of Court, which

will automatically send notification of such filing to all attorneys of record by placing the same

on the Court's electronic docket.

_/s/ James Everett Shelton_____
James Everett Shelton