## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

**JAMES EVERETT SHELTON**
      Plaintiff

-against-

                             Civil Action No. 2:18-cv-02545(MSG)

**NATIONAL STUDENT ASSIST, LLC**
**NIR J. GOLDIN**
**LIBERTY FINANCIAL USA, LLC**
**and**
**BRIAN M. ROCHE**
      Defendants

_____

### DEFENDANTS LIBERTY FINANCIAL USA, LLC and BRIAN M. ROCHE's
### JOINT MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS
### PLAINTIFFS' COMPLAINT PURSUANT TO RULES 12(b)1, 12(b)6, 20 and 21
_____

By: Norman M. Valz, Esq.– Attorney for Movants
Law Office of Norman M. Valz, P.C.
PA I.D. No. 61338
205 Arch Street - 2nd Floor
Philadelphia, PA   19106
Tel. (215) 756-2424
Fax (215) 827-5758
Email: nvalz@msn.com

## <u>TABLE OF CONTENTS</u>

**Page**

I.      PRELIMINARY STATEMENT……………………………………………..…1

II.     STANDARD OF REVIEW ......................................................................................5

      A. Federal Rule of Civil Procedure 12(b)(1) ................................................. 5
      B. Federal Rule of Civil Procedure 12(b)(6) ................................................5
      C. Federal Rule of Civil Procedure 12 (b)(2)…………………………….…..6
      D. Federal Rule of Civil Procedure 20 and 21………………………………7

III.    ARGUMENT .......................................................................................... 7

      A. Shelton Lacks Constitutional Standing Because He Has Suffered No
         Concrete Injury ......................................................................................7
      B. Shelton Fails to State a Claim Because He Is Outside the "Zone of Interest"
         of Statute………………………………………………………………….. 15
      C. Lack of Jurisdiction / Failure to State Claim Against Individual Defendants………..19
      D. Misjoinder of Causes of Action…………………………………………………..20
         1. Defendants do not share Common Transactions or Occurrences……………22
         2. The Consequences of Misjoinder………………………………………… 24

IV.     CONCLUSION………………………………………………………………25

# TABLE OF AUTHORITIES

CASES                                                                          PAGE

*Asahi Metal Indus. Co., Ltd. v. Superior Court of California*,
    480 U.S. 102, 109 (1987)…………………………………………….……...………16

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..........................................................................................5

*Ballentine v. United States*,
    486 F.3d 806 (3d Cir. 2007)..............................................................................4

*Beech Aircraft Corp.*,
    625 F.2d 273, 277 (9th Cir. 1980)…………………………….………………..22

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544, 570 (2007)…………………………………………………………5

*BP Chems. Ltd. v. Formosa Chem. & Fibre Corp.*,
    229 F.3d 254, 259 (3d Cir. 2000)………………………………….………17

*Bravado Int'l Group Merch. Servs. v. Cha.*,
    No. CV-09-9066 PSG, 2010 WL 2650432, at *1 (C.D. Cal. June 30, 2010)……………..7

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462, 475 (1985)………………………………………………16,17

*Caughlin v. Rogers*,
    130 F.3d 1348, 1350 (9th Cir. 1997)…………………………………………...20

*Coal. for a Sustainable Delta v. U.S. Fish & Wildlife Serv.*,
    2009 WL 3857417, at *2 (E.D. Cal. Nov. 17, 2009)…………………….………………20

*Constitution Party of Pa. v. Aichele*,
    757 F.3d 347 (3d Cir. 2014).............................................................................9

*Desert Empire Bank v. Ins. Co. of North America*,
    623 F.2d 1371, 1375 (9th Cir. 1980)…………………………….…………..7

*DirecTV, Inc. v. Leto*,
    467 F.3d 842, 845 (3d Cir. 2006)………………………………….…..22

*Doe v. Nat'l Bd. of Med. Examiners*,
    199 F.3d 146 (3d Cir. 1999)..............................................................................8

*Don King Prods., Inc. v. Colon-Rosario*,
    561 F.Supp.2d 189, 192 (D. Puerto Rico 2008)…………………………………...22

*Fowler v. UPMC Shadyside*,
    578 F.3d 203 (3d Cir. 2009)........................................................................................5

*Helicopteros Nacionales de Columbia, S.A. v. Hall*,
    466 U.S. 408, 416 (1984)……………………………………………..…………...…17

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310, 316 (1945)……………………………………..……………………6

*Koken v. Pension Benefit Guar. Corp.*,
    430 F. Supp. 2d 493, 497 (E.D. Pa. 2006)………………………………………………18

*Lexmark Int'l Inc. v. Static Control Components, Inc.*,
    134 S. Ct. 1377, 1388 (2014)………………………………………………………14

*Leyse v. Bank of Am. Nat'l Ass'n*,
    804 F.3d 316 (3d Cir. 2015)......................................................................................13

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ...............................................................................................6,7,8

*Marten v. Godwin*,
    499 F.3d 290, 296 (3d Cir. 2007)………………………………………….……5

*Mellon Bank (East) PSFP, Nat'l Ass'n v. Farino*,
    960 F.2d 1217, 1221 (3d Cir. 1992)………………………………………….…6

*Shelton v. Pivotal Payment Systems, Inc.*
    No. 2:18-cv-02545-MSG (E.D.Pa filed May 30, 2018)…………………………passim

*Shelton v. National Student Assist, LLC, et al.*
    No 1:18-cv-09915 (NJ District filed June 15, 2018)…………………….…………passim

*Shelton v. Fast Advance Funding*
    No. 2:18-cv-02071-PD (E.D.Pa filed May 26, 2018)…………………………passim

*Shelton v. Doan Sols., LLC*,
    No. 2:17-cv-02368-LDD (E.D. Pa. filed July 18, 2017)............................................ passim

*Shelton v. Fundbox, Inc.*,
    No. 2:17-cv-03301-RBS (E.D. Pa. filed July 24, 2017) ............................................ passim.

*Shelton v. iCapital Cash Grp., Inc.*,
    No. 2:17-cv-02620-TJS (E.D. Pa. filed Aug. 25, 2017) ............................................ passim

*Shelton v. LIG Int'l LLC*,
    No. 1:17-cv-01868-DCN (N.D. Ohio filed Sept. 6, 2017) .......................................... passim

*Shelton v. Mark D. Guidubaldi & Assocs., LLC*,
    No. 2:17-cv-02367-JHS (E.D. Pa. filed June 23, 2017) ................................................ passim

*Shelton v. Merch. Source, Inc.*,
    No. 2:17-cv-02851-GJP (E.D. Pa. filed Aug. 14, 2017) ........................................... passim.

*Shelton v. National Gas & Electric, LLC*
    No. 2:17-cv-04063-RBS (E.D.Pa file Sept. 11, 2017)……………………………… passim

*Shelton v. Centerpointe Lending Stud. Loan Srvs.*
    No. 2:18-cv-01655-NIQA (E.D. Pa filed April 19, 2018)…………………………… passim

*Shelton vs. Target Advance, LLC*
    No. 2:18-cv-02070-MAK (E.D. Pa filed May 5, 2018)……………………..………... passim

*Shelton vs. Paramount Holding Company, LLC*
    No. 2:18-cv-2072-TJS (E.D. Pa filed May 17, 2018)…………………..…….……… passim

*Shelton v. RFR Capital, LLC*
    No. 2:18-cv-02259-PBT (E.D. Pa filed May 30, 2018)…………………..…………... passim

*Shelton v. Green Star Capital Solutions, LLC*
    N. 2018-00009 (Montg. County Court of Common Pleas, PA)(Filed 1/1/2018)……. passim

*Shelton v. One Way Funding, LLC*
    No. 2017-27226 (Montg. County Court of Common Pleas, PA)(Filed 11/20/2017)… passim

*Shelton v. First Standard Financial Company, LLC*
    No. 2017-20635 (Montg. County Court of Common Pleas, PA)(File 8/16/2017)…... passim

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) .................................................................6

*Stoops v. Wells Fargo Bank, N.A.*,
    197 F. Supp. 3d 782 (W.D. Pa. 2016) ...................................................... *passim*

*Team Angry Filmworks, Inc. v. Geer*, 171 F. Supp. 3d 437, 441 (W.D. Pa. 2016) .........................5

*Tel. Sci. Corp. v. Asset Recovery Sols., LLC*,
    No. 15-cv-5182, 2016 WL 4179150 (N.D. Ill. Aug. 8, 2016) ...........................................8, 9

*UPS Worldwide Forwarding, Inc. v. U.S. Postal Serv.*,
    66 F.3d 621 (3d Cir. 1995)...........................................................................................8

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286, 297 (1980)…………………………………………….………………………18

**STATUTES**

47 U.S.C. § 227 ...................................................................................................6

47 U.S.C. § 227(a)(1) .........................................................................................17

47 U.S.C. § 227(b)(1)(A) ....................................................................................14

42. Pa. Cons. Stat. Ann. § 5322(b)…………………………………………….…6

Telephone Consumer Protection Act ................................................... *passim*

 **OTHER AUTHORITIES**

Restatement (Second) of Conflict of Laws § 187 (1971)…………………………………….……7

Fed. R. Civ. P. 4(k)(1)(A)………………………………………………………………..6

 Fed. R. Civ. P 12(b)(1) .........................................................................2, 3, 8, 14

 Fed. R. Civ. P. 12(b)(2)..........................................................................3, 4, 14

 Fed. R. Civ. P. 12(b)(6)............................................................................2, 4, 9

Fed. R. Civ. P. 20(a)(2)……………………………………………………………….……7,20

Fed. R. Civ. P. 21………………………………………………………..……………..22

 S. Rep. No. 102-178, at 1–2 (1991) ...................................................................2

*TCPA Litigation*, U.S. Chamber Institute for Legal Reform, at 1 (Oct. 2013) ...............................2

## PRELMINARY STATEMENT

Plaintiff is a professional litigant of cases under the Telephone Consumer Protection Act ("TCPA") and has <u>filed 29 such cases</u> (Plaintiff himself disclosed this fact in response to a Court Order issued by Judge Savage on June 21, 2018[See Exhibit "A" attached herewith]).   Plaintiff's Complaint in this matter used the "Kitchen Sink" method of throwing in parties and claims for action. This Motion seeks to dismiss all claims against individual Defendant, Brian M. Roche, who is a Defendant in this action solely for being listed as an officer in Defendant Liberty Financial USA, LLC which is a Delaware business corporation pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction and 12(b)(6) for failure to state a claim upon which relief can be granted.   Further, this Motion seeks to dismiss the claims brought against Liberty Financial USA, LLC for lack of standing and failure to state a claim upon which relief can be granted.   Finally, this Motion seeks to Dismiss Plaintiff's Complaint in its entirety for misjoinder of parties under Federal Rules of Civil Procedure 20 and 21.

Defendant, Liberty Financial USA, LLC is a business corporation registered in the State of Delaware.   Defendant Brian M. Roche, a resident of the State of Nevada appears to have been named in this suit for no other reason than the fact that he is an officer in Liberty Financial, USA.   No allegations against them were made in Plaintiff's Complaint regarding any personal knowledge or actions.

1

Plaintiff's Complaint contains no allegations of Roche's engaging in any activity within the Commonwealth of Pennsylvania.    Plaintiff's Complaint contains no allegations which could

possibly lead to the piercing of the corporate veil.

Plaintiff James Everett Shelton ("Shelton"), far from being a victim of alleged violations of the Telephone Consumer Protection Act (TCPA), is a serial litigant who has a business model based upon capitalizing on and encouraging his victims (Defendants in his cases) to contact him through a telephone he has allegedly placed on a Do Not Call List.    Shelton has filed twenty-nine (See Exhibits "A" and "B") cases, each one seeking damages for alleged TCPA violations.    Shelton's business model has been documented on his own website. Far from being an individual the TCPA was intended to protect, Shelton is a prolific self-litigator who has made a business out of suing companies and seeking statutory damages.

Shelton's company is called "Final Verdict Solutions," and his public website, which can be found at www.finalverdictsolutions.com.    Said website was recently altered, but until the last six months of operation, said website almost gloats about Shelton's use of the TCPA.    If a company calls the business telephone number listed on his website, which is the same number that Shelton

2

claims form the basis of his present lawsuit, Shelton will "play along" with that company, so he can then sue it for a purported TCPA infraction.

Utilizing this litigation business model, Shelton has filed at least twenty-nine TCPA cases (See Exhibit s "A" and "B").   Congress, however, never intended that the TCPA be used as an enterprising plaintiff's litigation goldmine. The Act is instead meant to protect consumers from actual nuisance and invasions of privacy. S. Rep. No. 102-178, at 1–2 (1991), *as reprinted in* 1991 U.S.C.C.A.N.  Thanks in part to litigious entrepreneurs and serial plaintiffs like Shelton, the TCPA "has become the poster child for lawsuit abuse," generating a "staggering amount of litigation" and exploding far beyond its original scope to instead become a "destructive force that threatens these money-making schemes and resource-wasting abuses must come to an end.

Plaintiffs like Shelton should not be allowed to use the TCPA as a lawsuit-generating weapon to turn a profit.   This Court should dismiss Shelton's complaint for two reasons:

> -*First*, Shelton has no Article III standing to bring his claim. An alleged telemarketing call to his business telephone line, which he advertises and operates in part to generate TCPA lawsuits, does not constitute the kind of "nuisance" or "invasion of privacy" that the TCPA was meant to remedy.

3

Shelton therefore has not suffered the kind of concrete, particularized harm

required to confer constitutional standing to sue. In other words, Shelton has

suffered no injury-in-fact, and the Court should dismiss his Complaint for

lack of standing under Federal Rule of Civil Procedure 12(b)(1).

-*Second*, even if Shelton could show a true injury-in-fact, he still lacks

prudential standing. Setting up a business line hoping he will receive

telemarketing calls, so he can then sue for statutory damages to turn a profit,

is not within the "zone of interests" the TCPA protects.

*See Stoops v. Wells Fargo Bank, N.A.*, 197 F. Supp. 3d 782, 805 (W.D. Pa. 2016).

Shelton

Even if Shelton possesses constitutional or prudential standing to file this

action (he does not).     This Court lacks personal jurisdiction over the individual

Defendants because the Complaint fails to allege *any* fact showing that Brian

Roche has the "minimum contacts" with Pennsylvania necessary to subject him to

personal jurisdiction in this Court.  Plaintiff's Complaint appears to base personal

jurisdiction solely upon a bald allegation that jurisdiction exists "due to their

purported connection to Defendant Liberty Financial USA, LLC.  Plaintiff does not

attempt to pierce the corporate veil nor does Plaintiff allude to any personal actions

or omissions committed by said individual Defendant.

4

## II. STANDARD OF REVIEW

### A. Federal Rule of Civil Procedure 12(b)(1)

Rule 12(b)(1) authorizes dismissal of a complaint where the plaintiff lacks constitutional standing to sue. *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014); *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007). "The standing inquiry focuses on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed." *Aichele*, 757 F.3d at 360 (citing *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008)). Where, as here, the moving party advances a "factual attack," the District Court may look beyond the pleadings to ascertain the facts and determine whether they do not support the assertion of jurisdiction. *Id.* at 358. "In a factual attack, the Plaintiff bears the burden of proof that jurisdiction in fact exists, and the court need not presume the truth of the Plaintiff's allegations." *Team Angry Filmworks, Inc. v. Geer*, 171 F. Supp. 3d 437, 441 (W.D. Pa. 2016) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).

### B. Federal Rule of Civil Procedure 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*,

5

550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief [is] . . . a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679; *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009).

## C.   Federal Rule of Civil Procedure 12(b)(2) – Lack of Personal Jurisdiction over Individual Defendants

Under Fed. R. Civ. P. Rule 4(k), "a federal district court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state." *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007) (internal quotation marks omitted); *see also* Fed. R. Civ. P. 4(k)(1)(A). Pennsylvania's long-arm statute, 42. Pa. Cons. Stat. Ann. § 5322(b), authorizes Pennsylvania courts "to exercise personal jurisdiction over nonresident defendants to the constitutional limits of the due process clause of the fourteenth amendment." *Mellon Bank (East) PSFP, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1221 (3d Cir. 1992). "The Due Process Clause of the Fourteenth Amendment requires that nonresident defendants have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Marten*, 499 F.3d at 296 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)) (internal

6

quotation marks omitted).

**D.      Misjoinder of Actions Under Federal Rules of Civil Procedure 20 and 21**

Rule 20 of the Federal Rules of Civil Procedure provides that defendants

may be joined if (1) any right to relief asserted against them jointly, severally, or in

the alternative relates to or arises out of the same transaction, occurrence, or series

of transactions or occurrences; and (2) any question of law or fact common to all

parties joined will arise in the action. Fed. R. Civ. P. 20(a)(2); *Desert Empire Bank*

*v. Ins. Co. of North America,* 623 F.2d 1371, 1375 (9th Cir. 1980). "Thus, Rule 20,

permits the joinder of multiple defendants only if two requirements are satisfied:

transactional relatedness and commonality." *Bravado Int'l Group Merch. Servs. v.*

*Cha.,* No. CV-09-9066 PSG, 2010 WL 2650432, at *1 (C.D. Cal. June 30, 2010).

Upon a finding of improper joinder, "the court may at any time, on just terms, add

or drop a party." Alternatively, the Court may sever claims against improperly

joined parties. *Id.*

## III. ARGUMENT

**A.      Shelton Lacks Constitutional Standing Because He Has Suffered No**
**         Concrete Injury**

The standing to sue doctrine is derived from Article III of the Constitution's

limitation of the judicial power of federal courts to "actual cases or controversies."

*Spokeo v. Robins*, 136 S.Ct. 1540, 1547 (2016) (citing *Raines v. Byrd*, 521 U.S.

7

811, 818 (1997)). "The doctrine limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." Id. "[T]he 'irreducible constitutional minimum' of standing consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Id. (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560- 61 (1992)). This case primarily concerns the first element The first element, injury in fact, "is a constitutional requirement, and 'it is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing.'" *Spokeo*, 136 S.Ct. at 1547-48 (quoting Raines, 521 U.S. at 820, n.3). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Id. at 1548 (quoting *Lujan*, 504 U.S. at 560). "'For an injury to be "particularized,' it 'must affect the plaintiff in a personal and individual way.'" Id. (quoting Lujan, 504 U.S. at 560, n.1). Meanwhile, "[a] 'concrete' injury must be 'de facto'; that is, it must actually exist." Id. (citing Black's Law Dictionary 479 (9th ed. 2009)). Therefore, a plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a

8

person a statutory right and purports to authorize that person to sue to vindicate that right. Article III standing requires a concrete injury even in the context of a statutory violation." Id. at 1549. A "bare procedural violation, divorced from any concrete harm," does not satisfy the injury-in-fact requirement of Article III. Id. "The party invoking federal jurisdiction bears the burden of establishing these elements. Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561 (internal citations omitted). Here, because Defendants make only a facial attack on standing in connection with their motion to dismiss, the Court only considers whether, assuming the truth of the allegations in the FAC, Plaintiff has Article III standing.

Plaintiff's alleged concrete harm bears no connection to the alleged violation of the TCPA. See *Spokeo*, 136 S.Ct. at 1549 (holding that "a bare procedural violation, divorced from any concrete harm, [does not] satisfy the injury-in-fact requirement of Article III"). Accordingly, Plaintiff has not and cannot satisfy the standing to sue requirements of Article III.

9

Standing is a crucial prerequisite to any federal lawsuit and requires that the "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), as revised (May 24, 2016); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). As the party invoking federal jurisdiction, a plaintiff bears the burden of establishing each of these three elements. *Spokeo*, 136 S. Ct. at 1547. At the pleading stage, for individual claims and class actions alike, the plaintiff must allege facts demonstrating it has standing to sue. *Id.* & n.6. Merely invoking a federal statute is insufficient,  on its own, to confer standing. *Id.* at 1549; *see also Doe v. Nat'l Bd. of Med. Examiners*, 199 F.3d 146, 153 (3d Cir. 1999) ("_e proper analysis of standing focuses on whether the plaintiff suffered an actual injury, not on whether a statute was violated.")

An injury-in-fact is the "first and foremost of standing's three elements." *Spokeo*, 136 S. Ct. at 1547 (citation and alteration omitted). To establish injury at the pleading stage, the plaintiff must allege facts demonstrating that "he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan*, 504 U.S. at 560).

10

The standing to sue doctrine is derived from Article III of the Constitution's limitation of the judicial power of federal courts to "actual cases or controversies." *Spokeo v. Robins*, 136 S.Ct. 1540, 1547 (2016) (citing *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). "The doctrine limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." Id. "[T]he 'irreducible constitutional minimum' of standing consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Id. (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560- 61 (1992)).

This case primarily concerns the first element. The first element, injury in fact, "is a constitutional requirement, and 'it is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing.'" *Spokeo*, 136 S.Ct. at 1547-48 (quoting *Raines,* 521 U.S. at 820, n.3). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Id. at 1548 (quoting *Lujan*, 504 U.S. at 560). "'For an injury to be "particularized," it 'must affect the plaintiff in a personal and individual way.'" Id.

11

(quoting Lujan, 504 U.S. at 560, n.1). Meanwhile, "[a] 'concrete' injury must be 'de facto'; that is, it must actually exist." Id. (citing Black's Law Dictionary 479 (9th ed. 2009)). Therefore, a plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. Article III standing requires a concrete injury even in the context of a statutory violation." Id. at 1549. A "bare procedural violation, divorced from any concrete harm," does not satisfy the injury-in-fact requirement of Article III. Id. "The party invoking federal jurisdiction bears the burden of establishing these elements. Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." Lujan, 504 U.S. at 561 (internal citations omitted).

At least one court has found a plaintiff lacked Article III standing where, as here, the TCPA claim was based on calls to a business number *that the plaintiff used specifically to drum up TCPA litigation*. Stoops, 197 F. Supp. 3d at 798. In *Stoops*, the plaintiff purchased several cell phones, hoping she would receive telemarketing calls from companies, so she could then sue them for TCPA

12

damages. *Id.* She registered her cell phones in Florida, to increase her chances

of receiving telemarketers' calls. *Id.* at 799.  She plaintiff made no bones about her

intentions: "I have a business suing offenders of the TCPA[.]" *Id.*

The *Stoops* court rightfully found that, in those circumstances, plaintiff

lacked constitutional standing because she hadn't suffered the kind of

particularized, concrete harm the TCPA was designed to prevent. *Id.* at 800. Calls

to cell phones that plaintiff had purchased to support her TCPA litigation business

did "not adversely affect the privacy rights that [the TCPA] is intended to protect."

*Id.* Because the plaintiff operated a business designed to generate litigation and

profits from telemarketing calls, those "calls did not constitute the nuisance,

invasion of privacy, cost, and inconvenience from which Congress intended to

protect customers." *Id.* (citation omitted).

In the matter at hand, Shelton operates a business called "Final Verdict

Solutions." His public website advertises two business ventures: a professional

judgment recovery outfit and a TCPA litigation operation. His company's website

even included a link describing this aspect of his business, in the top right-hand

corner, under a tab called "JAMES' TCPA CASES".  Shelton provided further

information to those who click on the link, divulging the manner by which he

drums up TCPA litigation: "I played along with your telemarketer script in order to

find out who you really are. Now I am going to sue you for violating 47 U.S.C. § 227."







Apart from this case, by his own admission, Shelton has instituted twenty-

nine (29) other TCPA lawsuits (See Exhibit "B").    He doesn't request that he never is called back, instead he solicits information from the sales person  "play along" with a potential telemarketer for the purpose of developing the current lawsuit.

Shelton is misusing the TCPA by turning it into a profit-generating scheme. This profit making purpose should deny Shelton Article III standing because neither provides the kind of particularized injury the TCPA is meant to remedy. *See Stoops*, 197 F. Supp. 3d at 800–01 (holding that plaintiff who brought TCPA claims as part of a litigation-generating business lacked standing because she suffered no actual injury-in-fact); *Leyse v. Bank of Am. Nat'l Ass'n*, 804 F.3d 316, 323 (3d Cir. 2015)

("Someone with a generalized interest in punishing telemarketers, for example, would not qualify [for Article III standing] on that basis alone."). Whether Shelton's TCPA litigation operation was designed to make money or punish telemarketers is immaterial; either way, Shelton cannot establish that he suffered an injury-in-fact. He consequently lacks constitutional standing to bring his suit, and the Court should dismiss his claim under Rule 12(b)(1).

## B. Shelton Fails to State a Claim Because He Outside the Statute's "Zone of Interest"

There is also no prudential standing for Shelton to bring his claim because

operating profit seeking TCPA lawsuit business falls outside of the "zone of interests" the TCPA protects. Where prudential standing does not exist, a plaintiff fails to state a claim upon which relief can be granted. *Stoops*, 197 F. Supp. 3d at 803–06; *Tel. Sci. Corp. v. Asset Recovery Sols., LLC*, No. 15- cv-5182, 2016 WL 4179150, at *15 (N.D. Ill. Aug. 8, 2016).

Prudential standing requires three elements:

> (1) a litigant assert his or her own legal interests rather than those of third parties, (2) courts refrain from adjudicating abstract questions of wide public significance which amount to generalized grievances, and (3) a litigant demonstrate that her interests are arguably within the "zone of interests" intended to be protected by the statute, rule or constitutional provision on which the claim is based.
>
> *UPS Worldwide Forwarding, Inc. v. U.S. Postal Serv.*, 66 F.3d 621, 626 (3d Cir. 1995) (internal citations and alterations omitted).

Shelton cannot establish the third element, which requires that "the injury he complains of . . . falls within the 'zone of interests' sought to be protected *by the statutory provision whose violation forms the legal basis for his complaint*." *Stoops*, 197 F. Supp. 3d at 804 (emphasis in original).  The "zone of interests" test "applies to all statutorily created causes of action."  *Lexmark Int'l Inc. v. Static*

16

*Control Components, Inc.*, 134 S. Ct. 1377, 1388 (2014); *Tel. Sci. Corp.*, 2016 WL 4179150, at *8. Courts have employed an exacting "zone of interest" test in the TCPA context, focusing their inquiry on "the Congressional intent of the statute and whether the complainant's interests were among the sorts of interest [the TCPA was] specifically designed to protect." *Stoops*, 197 F. Supp. 3d at 805 (citation omitted).

In the *Stoops* case, in applying the "zone of interests" test, the court found it "unfathomable that Congress considered a consumer who files TCPA actions as a business when it enacted the TCPA" because such individuals don't have "the sort of interest in privacy, peace, and quiet that Congress intended to protect. . . ." *Id.*; *see also Tel. Sci. Corp.*, 2016 WL 4179150, at *15 (holding that where the plaintiff intentionally engaged with potential telemarketers to build his business, his alleged injury fell outside of the TCPA's zone of interests).

Shelton, like the plaintiff in *Stoops*, files TCPA actions as a profit-making business.   He has acknowledged as much, admitting on his company's website that he pretends to pose as an interested customer in order to generate lawsuits under the Act.   Shelton, feigned interest in the company's services, and engaged with a sales representative who delivered a sales pitch—all so he could file his present class-action lawsuit. (Compl. ¶¶ 23–28, ECF No. 1.) Having developed this

17

action as part of his lawsuit-generating business model, Shelton does not manifest "the sorts of interests the TCPA was specifically designed to protect." *Stoops*, 197 F. Supp. 3d at 805. His claim therefore fails for lack of prudential standing and should be dismissed under Rule 12(b)(6).

In addition, prudential standing requires that (1) a litigant assert his or own legal interests rather than those of third parties; (2) courts refrain from adjudicating abstract questions of wide public significance which amount to generalized grievances; and (3) a litigant demonstrate that her interests are arguably within the zone of interests indented to be protected by the statue, rule or constitutional provision on which the claim is based. *Stoops v. Wells Fargo Bank*, N.A., 197 F. Supp. 3d 782, 803-804 *13 (W.D. Pa. 2016) (citing *UPS Worldwide Forwarding v United States Postal Serv*., 66 F.3d 621, 625 (3d Cir. 1995)).

In enacting the TCPA, Congress's intent "was to protect consumers from the nuisance, invasion of privacy, cost, and inconvenience that autodialed and prerecorded calls generate." See *Stoop*s, 197 F. Supp. 3d at 797 (citing In re Rules Implementing the Tel. Consumer Prot. Act. of 1991, 30 FCC Rcd. at 7979-80). In passing the Act, Congress "was animated by outrage over the proliferation of prerecorded telemarketing calls to private residences, which consumers regarded as an intrusive invasion of privacy and a nuisance." Id.; (stating that "the TCPA is a

18

remedial statute that was passed to protect consumers from unwanted automated telephone calls") (emphasis added). In this case.

## C. No Jurisdiction, No Claims Stated against individual Defendant.

"The Due Process Clause of the Fourteenth Amendment requires that nonresident defendants have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Marten*, 499 F.3d at 296 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)) (internal quotation marks omitted). "[M]inimum contacts must have a basis in 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Asahi Metal Indus. Co., Ltd. v. Superior Court of California*, 480 U.S. 102, 109 (1987) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). "Having minimum contacts with another state provides 'fair warning' to a defendant that he or she may be subject to suit in that state." *Marten*, 499 F.3d at 296 (quoting *Burger King*, 471 U.S. at 472).

Federal courts recognize two kinds of personal jurisdiction: (1) general jurisdiction, and (2) specific jurisdiction. "General personal jurisdiction exists when the defendant's contacts with the forum, whether or not related to the

19

litigation, are 'continuous and systematic.'" *BP Chems. Ltd. v. Formosa Chem. & Fibre Corp.*, 229 F.3d 254, 259 (3d Cir. 2000) (quoting *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 416 (1984)); *see also Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prod. Co.*, 75 F.2d 147, 151 n.3 (3d Cir. 1996). "Specific jurisdiction exists when the defendant has 'purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that 'arise out of or related to' those activities." *BP Chems.*, 229 F.3d at 259 (quoting *Burger King*, 471 U.S. at 472). In that circumstance, the defendant "should reasonably anticipate being haled into court" in the forum. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

"After the defendant has raised a jurisdictional defense, the plaintiff bears the burden of coming forward with enough evidence to establish, with reasonable particularity, sufficient contacts between the defendant and the forum." *Koken v. Pension Benefit Guar. Corp.*, 430 F. Supp. 2d 493, 497 (E.D. Pa. 2006) (Robreno, J.). "[A] plaintiff [may not] rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of in personam jurisdiction." *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 (3d Cir. 1984). A "plaintiff must respond with actual proofs" "through sworn affidavits or other competent evidence," *Id.* at 66 n.9, "establishing with

20

reasonable particularity contacts sufficient to support the court's exercise of personal jurisdiction." *Harris v. Trans Union, LLC*, 1997 F.Supp.2d 200, 203 (E.D. Pa. 2003).

None of the individual Defendants were served in Pennsylvania, are domiciled in Pennsylvania, or consented to the exercise of personal jurisdiction in Pennsylvania.    Jurisdiction over the individual Defendants is not proper in Pennsylvania. This Court should dismiss Plaintiff's causes of action against the individual Defendant because Plaintiff has not and cannot show the individual Defendant has the requisite "minimum contacts" to subject them to general or specific personal jurisdiction in Pennsylvania. Exercising personal jurisdiction over the individual Defendants would not comport with "traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316 (quotations omitted).

Finally, Plaintiff's own pleading against the individual Defendant names him merely because he was an officer in Liberty Financial USA, LLC.    No allegations were made that he acted outside his capacity as officer/ employee of said corporate Defendant.    No attempt has been made to state that the corporate veil should be pierced.    Plaintiff's claims against the individual Defendant facially fails under this scrutiny.

21

**D.      MISJOINDER OF CAUSES OF ACTION**

1.      Defendants Do Not Share Common Transactions or Occurrences.

In order for Defendants to be properly joined under Rule 20(a)(2), Plaintiff must assert a right to relief against them jointly, severally, or in the alternative arising out of the same transaction or occurrence or series of transactions or occurrences, and (2) raise a common question of law or fact. See Fed. R. Civ. P. 20(a)(2).  The Ninth Circuit has interpreted the phrase "same transaction, occurrence, or series of transactions or occurrences" to require a degree of factual commonality underlying the claims. *See Caughlin v. Rogers,* 130 F.3d 1348, 1350 (9th Cir. 1997). Proper joinder under Rule 20 requires that the "parties must assert rights, or have rights asserted against them, that arise from related activities – a transaction or an occurrence or a series thereof." *Coal. for a Sustainable Delta v. U.S. Fish & Wildlife Serv.,* 2009 WL 3857417, at *2 (E.D. Cal. Nov. 17, 2009)(citation omitted).

In the instant action it is unclear by a reading of the Complaint whether Plaintiff alleges that National Student Assist, LLC and Nir J. Goldin worked jointly with Liberty Financial USA, LLC and Brian Roche to violate the TCPA or if Plaintiff is merely alleging all of the Defendants are somehow guilty of violating the TCPA.. For purposes of this motion, Movants assume that Plaintiff has joined

22

them as parties to the action because he believes that his right to relief arises out of the same transaction or occurrence as the other named defendants. Plaintiff is misguided.

For example, in *DirecTV v. Loussaert,* 218 F.R.D. 639, 641-44 (S.D. Iowa 2003), DirecTV sued seven defendants who allegedly purchased illegal access devices. DirecTV submitted that its claims against the defendants arose out of the same transaction and occurrence because the factual backgrounds of the claims were similar – they occurred roughly at the same time, involved a single distribution center, and each defendant intended to illegally intercept the same satellite signal. *See id.* at 642. The court found, however, that the defendants' alleged acts of piracy were not related. *See id.* at 643. As no defendant was alleged to have known of the other defendants' transactions or illegal purposes, "each transaction represents a separate and independent act." *See id.*

Similar to DirecTV, Plaintiff argues that the factual background of the Defendants are similar, i.e., all four violated the same laws, all committed the same acts, all used email, and all were telemarketers. This is not enough to support the "same transaction or occurrence" test to support factual commonality of the underlying claims. See *DirecTV v. Loussaert,* 218 F.R.D. 639.   Defendant, Brian M. Roche does not, and did not know, Nir Goldin or National Student Assist, LLC,

23

and, was not aware of their actions towards Plaintiff and so Roche and Liberty Financial U.S.A.'s acts represent are separate and independent just like the DirecTV defendants. Roche Decl., ¶6. Thus, dismissal due to misjoinder is proper.

### 2. The Consequence of Misjoinder.

Federal Rule of Civil Procedure 21 governs the misjoinder of parties and permits the court "[o]n motion or on its own … at any time, on just terms, [to] add or drop a party[, or] also sever any claim against a party." Fed. R. Civ. P. 21. The Court has considerable discretion in choosing among these options. *See Sams v. Beech Aircraft Corp.,* 625 F.2d 273, 277 (9th Cir. 1980). An accepted practice under Rule 21 is to dismiss all defendants except for the first defendant named in the complaint, see *Coughlin,* 130 F.3d at 1350; see also *Coal. for a Sustainable Delta,* 12009 WL 3857417, at *8, and dropping a defendant for improper joinder operates as a dismissal without prejudice, see *DirecTV, Inc. v. Leto,* 467 F.3d 842, 845 (3d Cir. 2006).

Here, severance is not a practical option in this case because it is unclear how the Court would structure the severed actions. Plaintiff lumped all Defendants together and it is not the Court's responsibility to sort it out. *See Don King Prods., Inc. v. Colon-Rosario,* 561 F.Supp.2d 189, 192 (D. Puerto Rico 2008) ("Besides

24

concluding that the same transaction test was not met in the case above, the courts also found that this type of 'shotgun action' against many unrelated defendants, creates 'unmanageable administrative problems in the clerk's office and unfairness, confusion and prejudice to defendants in their efforts to answer plaintiff's complaints, make responsive motions and conduct pretrial proceedings." (citations omitted)).

If Plaintiff wishes to vindicate his rights against these parties, Plaintiff must institute separate actions in conformity with the Federal Rules. *See Arista,* 2008 WL 4823160, at *5 ("[I]f … Defendants are misjoined, Plaintiffs would be able to avoid paying the filing fees for separate actions against each of the improperly joined Defendants."). Plaintiff may attempt to consolidate later-filed actions if discovery reveals that they are related to the same transaction or occurrence. Accordingly, Roche respectfully requests the Court to dismiss Roche from the instant action.

## III.     **CONCLUSION**

For the foregoing reasons, Plaintiff's Complaint must be dismissed in its entirety and with prejudice pursuant to Fed.R.Civ.P. 12(b)(1) , 20 and 21. Plaintiff has no standing to act as Plaintiff in this matter, nor has he suffered any injuries related to the alleged violations of the TCPA.   Plaintiff remains outside

25

the Zone of Interest for this statute.

Further, Plaintiff's claims against individual Defendant should be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction and 12(b)(6) for failure to state a claim upon which relief can be granted.

Philadelphia, PA

July 23, 2018

Respectfully submitted,

**Law Office of Norman M. Valz, P.C.**

_____
Norman M. Valz, Esq.– Attorney for Movant
Law Office of Norman M. Valz, P.C.
PA I.D. No. 61338
205 Arch Street - 2nd Floor
Philadelphia, PA   19106
Tel. (215) 756-2424
Fax (215) 827-5758
Email: nvalz@msn.com

26

**Certification of service**

The undersigned certifies that true and correct copies of the foregoing was

served by first class mail or through the ECF System on the following:

JAMES EVERETT SHELTON

316 COVER BRIDGE ROAD

KING OF PRUSSIA PA 19406

Philadelphia, Pennsylvania                    Respectfully Submitted,

July 24, 2018                    _____
                                Norman M. Valz, Esq.– Attorney for Movants
                                Law Office of Norman M. Valz, P.C.
                                PA I.D. No. 61338
                                205 Arch Street – 2nd Floor
                                Philadelphia, PA   19106
                                Tel. (215) 756-2424
                                Fax (215) 827-5758