**Bryan Anthony Reo (#0097470)**
**P.O. Box 5100**
**Mentor, OH 44061**
**(B): (216) 505-0811**
**(P): (440) 313-5893**
**(E):  Reo@ReoLaw.org**

**Attorney for Plaintiff**

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAMES EVERETT SHELTON** | ) | |
| **316 Covered Bridge Road** | ) | |
| **King of Prussia, PA 19406** | ) | |
|      **Plaintiff,** | ) | **Civil Action** |
| | ) | |
|      **v.** | ) | **No. 2:18-cv-02545-MSG** |
| | ) | |
| **NATIONAL STUDENT ASSIST LLC** | ) | |
| **22287 Mulholland Hwy 140** | ) | |
| **Calabasas, CA 91302** | ) | |
| | ) | |
| **NIR J. GOLDIN, individually and in his capacity** | ) | |
| **as Managing Member/ CEO of NATIONAL** | ) | |
| **23908 Berndon St,** | ) | |
| **Woodland Hills, CA 91367** | ) | |
| | ) | |
| **LIBERTY FINANCIAL USA, LLC** | ) | |
| **c/o The Company Corporation** | ) | |
| **251 Little Falls Drive,** | ) | |
| **Wilmington, DE 19808** | ) | |
| | ) | |
| **BRIAN M. ROCHE, individually and in his** | ) | |
| **capacity as CEO/ Owner of Liberty Financial** | ) | |
| **USA, LLC** | ) | |
| **2620 S. Maryland Pkwy, Ste 14-136** | ) | |
| **Las Vegas, NV 89109** | ) | |
| | ) | |
| **DOES 1-100, inclusive** | ) | |
|      **Defendants** | ) | **Jury Trial Demanded** |

### AMENDED COMPALINT:

Plaintiff JAMES EVERETT SHELTON, through the undersigned counsel, brings this

action for damages, statutory damages, court costs, and injunctive relief under rights pursuant to

Federal Statute under 47 U.S.C. § 227, and 47 C.F.R. § 64.1200 for the *ultra vires* illegal actions and deliberate and knowing tortious activity of NATIONAL STUDENT ASSIST LLC (hereinafter "NATIONAL"), NIR J. GOLDIN, individually and in his capacity as Managing Member/CEO of NATIONAL, LIBERTY FINANCIAL USA, LLC (hereinafter "LIBERTY"), and BRIAN M. ROCHE, individually and as Managing Member and/or Owner of LIBERTY, in negligently and/or willfully contacting Plaintiff via Plaintiff's telephone to solicit sales ("Sales Calls") using an automatic telephone dialing system ("ATDS calls") in violation of the Telephone Consumer Protection Act, 47U.S.C. § 227 *et seq.* and related claims that form part of the same claim or controversy. Plaintiff also brings a claim against Defendant Roche for damages for a criminal act, Ohio R.C. 2307.60, as a result of Defendant Roche's telecommunications harassment in the form of texts messages to the Plaintiff which featured several threats of violence and abuse toward the Plaintiff and his family. Plaintiff demands a trial by jury, and complains and alleges as follows:

## I.        Introduction

1.      Plaintiff James Everett Shelton ("Plaintiff") brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012).

2.      Plaintiff brings this action to challenge Defendants' practices in the telephone solicitation of its products and services. Specifically, Plaintiff challenges Defendants' and Defendants' agents' illegal telephone solicitations by which they market their products and services by calling consumers whose numbers are listed on the National Do-Not-Call Registry utilizing automated dialing equipment, and Defendants' failure to maintain a Do-Not-Call list or Do-Not-Call policy.

3.      The TCPA is designed to protect consumer privacy by prohibiting unsolicited telemarketing calls to cellular telephones, unless the caller has the "prior express written consent" of the called party.

4.      "Month after month, unwanted robocalls and texts, both telemarketing and informational, top the list of consumer complaints received by" the Federal Communication Commission.[1]

5.      Plaintiff alleges that Defendants placed numerous telemarketing calls to Plaintiff's cellular telephone number for the purposes of advertising debt relief services, using an automatic telephone dialing system (ATDS), which is prohibited by the TCPA.

6.      Plaintiff never consented to receive any of these calls.

7.      All of the claims asserted herein arise out of Defendants' illegal telephone solicitation campaign and are a common fact pattern.

## II.      Jurisdiction and Venue

8.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

9.      Venue is proper in this court in that Defendants conduct business in, and a substantial part of the events giving rise to plaintiff's claims occurred in, Pennsylvania's Montgomery County. Plaintiff received the phone calls to his private mobile telephone number as a permanent resident of Montgomery County. Defendants conduct business in this judicial district by calling Pennsylvania consumers. Plaintiff's telephone number has a (484) Pennsylvania area code and is registered to Plaintiff's home address. Each of the Defendants has sufficient minimum contacts with this county, and otherwise purposely avail themselves of the markets in this county. Also, see *Lary V. The Doctors Answer, LLC* CV-12-S-3510-NE (N.D. Ala. March 8, 2013.), a Federal Telephone Consumer Protection Act case, which held that "venue is proper in the district where

---

[1] *Omnibus TCPA Order*, GC Docket 02-278, FCC 15-72, 2015 WL 4387780, ¶ (July 10, 2015)

[plaintiff] resides because the injury did not occur when the facsimile was sent…; it occurred

when the [facsimile] was received."

### III.   Parties

**10.**    Plaintiff JAMES EVERETT SHELTON ("Plaintiff") is an individual who received the

alleged phone calls on his private mobile telephone line mentioned herein. Plaintiff is an adult

individual and citizen of the Commonwealth of Pennsylvania who has a residence of 316

Covered Bridge Road, King of Prussia, PA 19406.

**11.**    Defendant NATIONAL STUDENT ASSIST LLC ("NATIONAL") is a California

limited liability company with a registered principal address of 22287 Mulholland Hwy 140,

Calabasas, CA 91302, and a registered agent of NIR J. GOLDIN. NATIONAL transacts business

in, *inter alia*, Montgomery County, Pennsylvania. NATIONAL is not registered to do business in

the Commonwealth of Pennsylvania, however, NATIONAL markets and sells, *inter alia*, student

loan relief and/or debt consolidation and debt forgiveness services to people in Pennsylvania.

**12.**    Defendant NIR J. GOLDIN ("GOLDIN") is a resident of the State of California and the

Registered Agent of NATIONAL. GOLDIN is believed to reside at 23908 Berndon Street,

Woodland Hills, CA 91367. GOLDIN is the Managing Member and upon information and

belief, is the primary Owner of NATIONAL. GOLDIN is the primary individual who reaps the

benefit of the illegal and tortious conduct that is carried out technically in NATIONAL's name

only. Such deliberate and knowing conduct exceeds the permissible actions of corporations in

Pennsylvania, California, and nationwide.

**13.**    Defendant LIBERTY FINANCIAL USA, LLC ("LIBERTY") is a Delaware limited

liability company with a principal business location of 2620 S. Maryland Pkwy, Las Vegas, NV

89109. LIBERTY's registered agent is The Company Corporation, 251 Little Falls Drive,

Wilmington, DE 19808. LIBERTY is not registered to do business in the Commonwealth of Pennsylvania, however, LIBERTY markets and sells, *inter alia*, debt relief and/or debt consolidation and debt forgiveness services to people in Pennsylvania.

14.     Defendant BRIAN M. ROCHE ("ROCHE") is a resident of the State of Nevada and the CEO and/or Managing Member of LIBERTY. ROCHE is a former professional football player who played Tight End in the National Football League (NFL) for the San Diego Chargers and Kansas City Chiefs between 1996-1998. ROCHE may be served at 2620 S. Maryland Pkwy Ste 14-136, Las Vegas, NV 89109. It is believed, and therefore averred, that ROCHE is the Managing Member and upon information and belief, is the primary Owner of LIBERTY. ROCHE is the primary individual who reaps the benefit of the illegal and tortious conduct that is carried out technically in LIBERTY's name only. Such deliberate and knowing conduct exceeds the permissible actions of corporations in Pennsylvania, Delaware, Nevada, and nationwide.

15.     At all times herein mentioned, NATIONAL, GOLDIN, LIBERTY, and ROCHE (collectively, "Defendants"), and each of them, were an agent or joint venture of each of the other, and in doing the acts alleged herein, were acting within the scope of such agency. Each Defendant had actual and/or constructive knowledge of the acts of each of the other Defendants, and ratified, approved, joined in, acquiesced and/or authorized the wrongful acts of each co-Defendant, and/or retained the benefits of said wrongful acts.

16.     Defendants, and each of them, aided and abetted, encouraged and rendered substantial assistance to the other Defendants in committing the wrongful acts alleged herein. In taking action, as particularized herein, to aid and abet and substantially assist the commission of these wrongful acts and other wrongdoing complained of each of the Defendants acted with an

awareness of its primary wrongdoing and realized that its conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

17.     At all times herein mentioned, Defendants conspired by means of mutual understanding, either expressly or impliedly, among themselves and others in engaging and/or planning to engage in the activities detailed herein to accomplish the wrongful conduct, wrongful goals, and wrongdoing.

18.     Plaintiff is unaware of the true identities of the automated dialing defendants sued as DOES 1-100. Plaintiff will seek leave of the court to amend his complaint when their identities have been more fully ascertained.

**The TCPA imposes personal liability on individuals who participate in or commission telemarketing calls.**

19.     Under the TCPA, an individual such as GOLDIN or ROCHE may be personally liable for the acts alleged in this Complaint pursuant to 47 U.S.C. § 217 of the TCPA, which reads, *inter alia*:

[T]he act, omission, or failure of any agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be deemed to be the act, omission, or failure of such carrier or user *as well as of that person.*

47 U.S.C. § 227 (emphasis added).

20.     When considering individual officer liability, other Courts have agreed that a corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. See, *e.g., Jackson v. Five Star Catering, Inc., v. Beason,* 2013 U.S. Dist. LEXIS 159985, *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA "where they 'had direct, personal participation in or personally authorized the

conduct found to have violated the statute.'"); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415-16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

21.     Defendants GOLDIN and ROCHE are personally liable under the "participation theory" of liability because they are corporate officers and/or the principal Owners of NATIONAL and LIBERTY, respectively, knew of their companies' violations, and directed employees and/or agents of these NATIONAL and LIBERTY, respectively to continue making those violations.

22.     This is because Defendants GOLDIN and ROCHE authorized and oversaw each of NATIONAL's and LIBERTY's telemarketing processes and calls which were made on behalf of NATIONAL and LIBERTY, respectively.

23.     Defendants GOLDIN and ROCHE knew that it was illegal to make robocalls to consumers, but despite their knowledge of acts that constituted violations of the TCPA, they did nothing to cease their illegal conduct.

24.     It is believed, and therefore averred, that Defendants GOLDIN and ROCHE used their own funds to pay for a robodialing campaign which blatantly violated the TCPA.

25.     Defendants GOLDIN and ROCHE personally directed their agents and employees to make robocalls to consumers whose numbers were on the Do Not Call Registry.

26.     Moreover, it is believed, and therefore averred, that Defendants GOLDIN and ROCHE personally sought out and hired the same robodialing company and/or lead generation provider to harass the Plaintiff with robocalls.

27.     Defendants GOLDIN and ROCHE knew that these robocalls were deceptive and employed the practice of caller ID spoofing, and knew that the practice of caller ID spoofing was illegal, but continued to allow, condone, and pay for these illegal robocalls.

**28.**     Furthermore, Defendants GOLDIN and ROCHE also personally liable because they were responsible for ensuring their agents and/or employees' TCPA compliance.

### IV.     Factual Allegations

**29.**     Defendants use robocalls to market their products and services.

**30.**     Defendants' telemarketing efforts include calling cell phone numbers that are listed on the National Do-Not-Call registry for more than 31 days prior to the calls.

**31.**     At all times material hereto, Plaintiff was the subscriber of the telephone number 484-626-3942 and paid his cell phone bill through T-Mobile.

**32.**     Plaintiff's personal cellular telephone number, 484-626-3942, has been successfully registered on the National Do-Not-Call Registry since June 26, 2015, more than 31 days prior to the calls.

**33.**     Beginning in January 2018, Plaintiff began to receive numerous prerecorded robocalls to his cellular telephone number (484) 626-3942 about debt relief programs from an unknown individual named "Steven".

**34.**     These robocalls were especially difficult for Plaintiff to track or document, and it was hard for Plaintiff to ascertain who was behind these robocalls.

**35.**     Often times, telemarketers utilize "caller ID spoofing", which is where fake caller ID displays on the recipient's telephone in an attempt to deceive the called party or conceal the identity of the telemarketer responsible. In this case, the individuals behind this rampant robocall campaign utilized caller ID spoofing to attempt to hide their true identities, so Plaintiff will need to seek discovery from the telemarketers responsible to determine the specific number of calls which were made to Plaintiff.

**36.**     At all times material herein, Plaintiff received all of the calls complained of in this case on his cellular telephone number, (484) 626-3942. This is the only telephone number Plaintiff owns.

**37.**     On January 18, 2018 at 10:41 AM, Plaintiff received the following voicemail from 503-342-2449: "Hello, it's Steven with benchmark, I hope you're having a good start to the New Year. Anyway, I wanted to reach out because I got you approved for the new debt relief program up to $55,000. I'm gonna have this approval with me for the next few days here, so call me as soon as you can. This was the program designed to lower the monthly payments and obviously satisfy this debt once and for all. Give me a call back at 503-342-2449. Again, that's 503-342-2449. Talk to you soon, and have a blessed day."

**38.**     This voicemail was made using automated technology to send a prerecorded message. Plaintiff knows that this is the case because the message was totally impersonal, generic, and was indicative of a recording, rather than a live human being.

**39.**     On March 8, 2018 at 12:39 PM, Plaintiff received the following voicemail from the caller ID (714) 503-8315: "From underwriting, I have some great news about your loan application. Call me as soon as possible. My phone number is 503-447-5363. Again that is 503-447-5363. Any one of my staff can help you. I look forward to hearing from you, and have a blessed day."

**40.**     Plaintiff could tell this was a prerecorded message and not a live human being because the message was impersonal, totally generic, and scripted.

**41.**     On March 9, 2018, at 10:03 AM, Plaintiff received the following "ringless voicemail" from the spoofed caller ID +1 0000000000, which played a prerecorded message: "Hello, this is Steven with quality one. I wanted to reach out because I got you approved up to $55,000 with the new debt relief program. I'm actually going to have this approval with me for the next few days,

9

so when you get a chance, if you can call me back today, or as soon as you can. This is again with the program designed to lower the monthly payments, obviously satisfy the debt once and for all. You can reach me at 503-447-5313. Again, that's 503-447-5313. I'll talk to you soon, and have a blessed day."

**42.**    A ringless voicemail is when a robodialer places a prerecorded message in a person's voicemail without causing the recipient's telephone to ring. It is placed using an automatic telephone dialing system (ATDS). Plaintiff finds ringless voicemails very annoying.

**43.**    At 12:57 PM on March 12, 2018, Plaintiff received another "ringless voicemail" from the caller ID (360) 469-1557. The voicemail said: "Hello, this is Steven with quality one. I wanted to reach out because I got you approved up to $55,000 with the new debt relief program. I'm actually going to have this approval with me for the next few days, so when you get a chance, if you can call me back today, or as soon as you can. This is again with the program designed to lower the monthly payments, obviously satisfy the debt once and for all. You can reach me at 503-447-5313. Again, that's 503-447-5313. I'll talk to you soon, and have a blessed day."

**44.**    At 3:59 PM on March 12, 2018, Plaintiff received another ringless voicemail from 714-519-2115: "Hello, this is Steven with quality one. I wanted to reach out because I got you approved up to $55,000 with the new debt relief program. I'm actually going to have this approval with me for the next few days, so when you get a chance, if you can call me back today, or as soon as you can. This is again with the program designed to lower the monthly payments, obviously satisfy the debt once and for all. You can reach me at 503-447-5313. Again, that's 503-447-5313. I'll talk to you soon, and have a blessed day."

**45.**    On March 12, 2018 at 7:42 PM, Plaintiff called 503-447-5313 to try to find out who was robocalling him, but was not able to get through to anyone.

46.     In a further effort to identify the caller's identity, Plaintiff called 503-447-5313 again on

March 13, 2018 at 10:57 AM. Plaintiff heard a pause, followed by a click and a "bloop" sound,

which is indicative of a live-transfer from a computer to a human being. Plaintiff was then

connected with "Mindy Braun" at LIBERTY. Plaintiff feigned interest in student loan relief

programs and interacted with "Mindy" on the phone.

47.     On March 12, 2018 at 11:04 AM, Plaintiff received an automated, unsolicited text

message from a number which displayed on Plaintiff's telephone as (833) 286-1973. The

message read as follows:

> We just spoke regarding your Federal student loan debt. Below please find my contact
> information.
>
> Regards,
> Mindy Braun
> Liberty Financial USA
> Phone: 800-957-6697, Ext. 1008
> Fax: 800-878-9746
> Email: Mbraun@LibertyFinancialusa.com
> Website:
> www.LibertyFinancialUSA.com

48.     Defendant LIBERTY and/or ROCHE is believed to own the website

www.LibertyFinancialUSA.com, which is advertised as Defendant LIBERTY's webpage.

49.     Between March and May 8, Plaintiff received many additional calls from "Steven",

however, he did not document them and will need to seek discovery to fully ascertain when they

took place.

50.     On May 8, Plaintiff received a voicemail from 503-647-8189 at 8:35 AM, which said:

"Hello, this is Steven with quality one. I wanted to reach out because I got you approved up to

$55,000 with the new debt relief program. I'm actually going to have this approval with me for

the next few days, so when you get a chance, if you can call me back today, or as soon as you

can. This is again with the program designed to lower the monthly payments, obviously satisfy the debt once and for all. You can reach me at 503-447-5313. Again, that's 503-447-5313. I'll talk to you soon, and have a blessed day."

51.     On May 9, 2018 at 1:47 PM, Plaintiff called 503-447-5313 (the same number which "Steven" kept telling Plaintiff to call) to attempt to identify the entities behind the robocalls. Plaintiff heard a click and pause, followed by a "bloop" sound, then he was connected with a live human being, "Daniel Mamos".

52.     As a result of this phone call, "Daniel Mamos", danny@studentservicing.net, sent Plaintiff an e-mail on May 9, 2018 attempting to get the Plaintiff to enroll in a student loan relief program.

53.     The entity which employs "Daniel Mamos" is defendant NATIONAL, which is evidenced by the email received by Plaintiff that confirms NATIONAL's corporate identity.

54.     At no time did Plaintiff provide his consent to receive any calls from "Steven", the robocalling defendants named herein, or anyone else involved in this dialing campaign.

55.     Prior to these unsolicited calls, the Plaintiff has never done any business with Defendants and Plaintiff never provided one or more of Defendants with his cellular telephone number.

56.     Defendants did not have the Plaintiff's prior express written consent to make these calls.

57.     In fact, before filing this lawsuit, the Plaintiff wrote to defendant NATIONAL asking if they had his prior express written consent to make the calls, but NATIONAL did not provide any evidence of consent.

58.     Plaintiff also requested in his e-mail to have his number placed on NATIONAL 's internal Do-Not-Call list, and requested to receive a copy of NATIONAL 's internal company Do-Not-Call policy.

**59.**     NATIONAL failed and/or refused to provide a written copy of their internal company Do-Not-Call policy to Plaintiff, despite a written e-mail request and notice of Plaintiff's intent to file a formal claim.

**60.**     Pursuant to 47 CFR 64.1200(d)(1), a telemarketer is required, upon request, to send a consumer a written copy of their company Do-Not-Call Policy.

**61.**     Defendants failed and/or refused to put Plaintiff's number on their internal company Do-Not-Call list.

**62.**     To the extent Defendants contend that they obtained consent or agreement from Plaintiff for the calls at issue here, the Telemarketing Sales Rule, 16 C.F.R. § 310.5(a)(5), requires that such records be maintained. In any event, consent is an affirmative defense under the TCPA, this defense is unavailable unless Defendants can show that they had prior express consent in writing, and that they have otherwise complied with all of the requirements of 47 C.F.R. § 64.1200(c)(2), including maintaining written procedures on national do-not-call rules, training personnel on national do-not-call rules, maintaining an internal do-not-call list, and accessing the national do-not-call database no more than 31 days prior to making any calls, and maintaining records documenting such access. Defendants did not have prior express written consent to such calls from Plaintiff, and did not produce any such written consent, even though the Plaintiff contacted Paramount inquiring about the calls before filing this lawsuit.

**63.**     Plaintiff pays for each incoming and outgoing call on his telephone under an unlimited calling arrangement, as defined and set forth in 47 CFR § 64.1200(a)(1)(iii).

**64.**     Plaintiff received the calls on his private mobile telephone, as defined and set forth in 47 CFR § 64.1200(a)(1)(iii). Plaintiff's telephone number is registered with T-Mobile as a cellular telephone number and is used for personal purposes.

**65.**     These telephone solicitations constituted "calls" under the TCPA that were not for

emergency purposes.

**66.**     Plaintiff was harmed by these calls. Plaintiff was temporarily deprived of legitimate use

of his phone because the phone line was tied up during the telemarketing calls and his privacy

was improperly invaded. Moreover, these calls injured Plaintiff because they were frustrating,

obnoxious, annoying, were a nuisance and disturbed the solitude of Plaintiff. The calls caused

Plaintiff's cell phone battery's depletion, used up cellular data, and prevented Plaintiff from

otherwise using his telephone for lawful purposes.

### Defendant Brian M. Roche's Subsequent Death Threats & Harassment

**67.**     On September 16, 2018, subsequent to the filing of this lawsuit, Defendant Brian M.

Roche personally contacted the Plaintiff by telephone.

**68.**     After a telephone conversation that lasted approximately 40 minutes, Mr. Roche sent Mr.

Shelton a text message asking for Mr. Shelton's e-mail address.

**69.**     Mr. Shelton then provided Mr. Roche his personal e-mail address.

**70.**     Mr. Roche sent Mr. Shelton a settlement agreement for Mr. Shelton to review.

**71.**     Mr. Shelton advised Mr. Roche that the terms of the proposed settlement agreement were

unacceptable.

**72.**     In response, Mr. Roche texted Mr. Shelton "sign or settle or don't I play to win in court

and on the street".

**73.**     Mr. Roche then sent a series of highly threatening and extortionate emails to the Plaintiff,

threatening Mr. Shelton with physical violence if Mr. Shelton did not drop his case against Mr.

Roche.

74.     Mr. Roche texted Mr. Shelton, "Everyone is tough until they are on their knees in tears and piss all over themselves begging".

75.     Mr. Roche texted Mr. Shelton, "Deal expires at 9 am pst dude one time only deal make peace or war and I fight with nukes not just guns or knives".

76.     Mr. Roche texted Mr. Shelton, "I grew up in LA and have a lot of homies."

77.     At the time, Mr. Roche knew that Mr. Shelton was attending college at Case Western Reserve University in Cleveland, Ohio.

78.     Mr. Roche texted Mr. Shelton, "Take my boy Domino for example he has tattoos all over his face you can't miss him when he steps onto Case Western campus."

79.     Mr. Roche texted Mr. Shelton, "I'm going to bed if it's in my email in morning we have a deal if not Domingo [sic] wants to go visit family in Ohio and you can negotiate with him".

80.     Mr. Roche texted Mr. Shelton, "James you and your dad are very vulnerable trust me…"

81.     Mr. Roche intimated to Mr. Shelton via text message that if he accepted Mr. Roche's settlement offer, there would be "no risk of anyone from [the] street coming to pay you a visit".

82.     Mr. Roche told Mr. Shelton that if he accepted the settlement offer, Mr. Shelton would be dismissing Defendants Liberty and Roche out of the lawsuit "because you (Mr. Shelton) are scared for your life".

83.     These text messages were clearly intended to intimidate Mr. Shelton into dismissing his claims against Defendants Liberty and Roche.

84.     As a result of these text messages, Mr. Shelton became scared and reported the matter to the Case Western Reserve University Police Department.

85.     Additionally, Mr. Shelton attempted to obtain a civil protection order against Mr. Roche in the Cuyahoga County Court of Common Pleas.

**86.**     Mr. Roche's threatening and harassing text messages caused Mr. Shelton to fear for his

safety, as well as his family's.

**87.**     These threats of violence constituted telecommunications harassment, because they were

intended to coerce Mr. Shelton into dropping his TCPA claims against Defendants Liberty and

Roche, and because they were outright abusive, malicious, and threatening.

<u>**Causes Of Action**</u><br><u>**First Cause of Action**</u><br>(Negligent Violation of the TCPA "RoboCall" Prohibition, 47 U.S.C. § 227 et seq.)

**88.**     Plaintiff incorporates and realleges, as though fully set forth herein, each of the

paragraphs above.

**89.**     As a result of Defendants' and Defendants' agents' negligent violations of 47 U.S.C.

§ 227(b)(1)(A), Plaintiff seeks for himself $500.00 in statutory damages, for each and every

violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

**90.**     Pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiff seeks injunctive relief prohibiting

such conduct in the future.

<u>**Second Cause of Action**</u><br>(Knowing and/or Willful Violation of the TCPA<br>"RoboCall" Prohibition, 47 U.S.C. § 227 et seq.)

**91.**     Plaintiff incorporates and realleges, as though fully set forth herein, each of the

paragraphs above.

**92.**     As a result of Defendants' and Defendants' agents knowing and/or willful violations

of 47 U.S.C. § 227(b)(1)(A), Plaintiff seeks for himself treble damages, as provided by statute,

up to $1,500.00 for each and every violation, pursuant to 47 U.S.C. § 227(b)(3).

**93.**     Pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiff seeks injunctive relief prohibiting

such conduct in the future.

### Third Cause of Action

(Negligent Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. § 227 et seq.)

**94.**     Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

**95.**     As a result of Defendants' and Defendants' agents negligent violations of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. 64.1200(c)(2), Plaintiff seeks for himself $500 in statutory damages for each and every violation, pursuant to 47 U.S.C. § 227(c)(3)(F).

**96.**      Pursuant to 47 U.S.C. § 227(c)(5)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

### Fourth Cause of Action
(Knowing and/or Willful Violation of the TCPA
"Sales Call/DNC" Prohibition, 47 U.S.C. § 227 et seq.)

**97.**     Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

**98.**     As a result of Defendants' and Defendants' agents knowing and/or willful violations of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. 64.1200(c)(2), Plaintiff seeks for himself treble damages, as provided by statute, up to $1,500.00 for each and every violation, pursuant to 47 U.S.C. § 227(c)(5).

**99.**     Pursuant to 47 U.S.C. § 227(c)(5)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

### Fifth Cause of Action
(Negligent Violation of the TCPA "Do-Not-Call Policy" Requirement, 47 CFR 64.1200 et seq.)

**100.**     Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

**101.**     As a result of Defendants' and Defendants' agents' negligent violations of 47 CFR

64.1200(d)(1), Plaintiff seeks for himself $500 in statutory damages for each and every violation, pursuant to the implied private right of action.

### Sixth Cause of Action
(Knowing and/or Willful Violation of the TCPA
"Do-Not-Call Policy" Requirement, 47 CFR 64.1200 et seq.)

**102.**   Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

**103.**   As a result of Defendants' and Defendants' agents knowing and/or willful violations of 47 CFR 64.1200(d)(1) Plaintiff seeks for himself treble damages, as implied, up to $1,500.00 for each and every violation, pursuant to the implied private right of action.

### Seventh Cause of Action
(Negligent Violation of the TCPA "Do-Not-Call List" Requirement, 47 CFR 64.1200 et seq.)

**104.**   Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

**105.**   As a result of Defendants' and Defendants' agents' negligent violations of 47 CFR 64.1200(d)(3), Plaintiff seeks for himself $500 in statutory damages for each and every violation, pursuant to the implied private right of action.

### Eighth Cause of Action
(Knowing and/or Willful Violation of the TCPA
"Do-Not-Call List" Requirement, 47 CFR 64.1200 et seq.)

**106.**   Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

**107.**   As a result of Defendants' and Defendants' agents knowing and/or willful violations of 47 CFR 64.1200(d)(3) Plaintiff seeks for himself treble damages, as implied, up to $1,500.00 for each and every violation, pursuant to the implied private right of action.

18

**Ninth Cause of Action**
**James Everett Shelton v. Brian M. Roche**
(Civil Action for Damages for Criminal Act, Ohio R.C. 2307.60)

**108.**   Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

**104.**   It constitutes a criminal act in the State of Ohio to harass, intimidate, abuse, or abuse someone by telephone. See Ohio R.C. 2917.21.

**105.**   Defendant Roche knowingly threatened the Plaintiff's life and his safety, as well as his father's, and knew such threats were intimidating, coercive, menacing, and obscene, and were made with the intent to abuse, threaten, and harass the Plaintiff. Ohio R.C. 2917.21(A)(6).

**106.**   Plaintiff may seek recovery for criminal conduct which if prosecuted would constitute a crime in Ohio, specifically, telecommunications harassment. R.C. § 2307.60(B)(2)(b) and R.C. § 2307.60(B)(2)(c).

**107.**   Defendant Roche is liable to Plaintiff for engaging in criminal acts that resulted in Plaintiff suffering damages.  R.C. § 2307.60.

**108.**   Plaintiff was physically present in Cleveland, Ohio on September 16, 2018 and September 17, 2018, the dates the text message threats and harassment occurred.

**109.**   Defendant's threats were directly tied to the instant federal lawsuit which Plaintiff filed in Pennsylvania, for if Plaintiff had never filed this action in Pennsylvania, Defendant Roche would never have made these wanton and malicious threats via telephone.

**110.**   Therefore, this Court may exercise jurisdiction over these claims.

**111.**   Plaintiff suffered damages from Defendant's conduct. Specifically, Plaintiff became worried, lost sleep, became scared, and believed that Defendant might actually follow through on his threats to do violence upon the Plaintiff and/or his family.

**112.**    Because of this, the Plaintiff reported this matter to the Case Western Reserve University Police Department on September 21, 2018.

**113.**    Additionally, Mr. Shelton attempted to file for a Civil Protection Order in Cuyahoga County, Ohio in September, 2018, because he was worried that Defendant Roche might follow through with his threats of violence.

**114.**    Specifically, Mr. Shelton was seriously worried that Mr. Roche, who is a 6 foot 4 inch, 255 pound former NFL tight end, would come find the Plaintiff and do physical violence to him using his superior physical size and strength. See:

https://en.wikipedia.org/wiki/Brian_Roche_(American_football).

**115.**    Defendant Roche is liable to Plaintiff for engaging in criminal acts that resulted in Plaintiff suffering damages.  R.C. § 2307.60.

**116.**    Plaintiff seeks punitive damages against Defendant Roche for gross and malicious conduct in violation of Ohio telecommunications harassment law.

**WHEREFORE, Plaintiff prays for relief against defendants, as follows:**
**V.      Prayer for Relief**

On Causes of Action 1-8:

  1.  For awards of $500 for each negligent violation as set forth in actions 1-8.

  2.  For awards of $1,500 for each knowing and/or willful violation as set forth in actions 1-8.

  3.   For an award of greater than $50,000 for engaging in criminal acts, including telecommunications harassment, directed towards the Plaintiff. R.C. § 2307.60.

  4.  Injunctive relief against Defendants, and each of them, to prevent future wrongdoing, including telecommunications harassment;

Total statutory damages: **$24,000** (7 counts of "Sales call/ Sales Text Message to a number registered on the National Do-Not-Call Registry", Seven counts each of "ATDS call/ ATDS text

message", and one count each of "Failure to Put Plaintiff's Number on Defendants' Do-Not-Call list", and "Failure to provide a copy of Defendant's Do-Not-Call Policy", with treble damages for each.)

    5.  Prejudgment interest at the maximum legal rate;

    6.  Costs of suit herein incurred; and

    7.  All such other and further relief as the Court deems proper.

**VI.**    <u>**Demand for Jury Trial**</u>

Plaintiff hereby demands a trial by jury on all claims so triable.

Dated: June 21, 2019

/s/ <u>Bryan Anthony Reo</u>
Bryan Anthony Reo (#0097470)
P.O. Box 5100
Mentor, OH 44061
(B): (216) 505-0811
(P): (440) 313-5893
(E): Reo@ReoLaw.org
***Attorney for Plaintiff***

<u>**VERIFICATION**</u>

I, JAMES EVERETT SHELTON, Plaintiff, Pro Se, verify that the facts set forth in this complaint are true and correct to the best of my knowledge, information, and belief. I understand that the statements made herein are subject to the penalties of 18 PA. C.S. § 4904 related to unsworn falsification to authorities.

Dated: June 21, 2019

/s/ <u>JAMES EVERETT SHELTON</u>

21